John ROGERS, a minor, by and through his next friend James K. Rogers, et al., Plaintiffs-Respondents-Appellants,

v.

TORO MANUFACTURING COMPANY, a corporation, Defendant-Appellant,

and

Madeleine J. Neiswander, Executrix of the Estate of Dale E. Neiswander, Deceased, Defendant-Respondent.

Nos. 35125, 35126.

Missouri Court of Appeals, St. Louis District, Division Two.

March 11, 1975.

Motion for Rehearing or Transfer Denied April 14, 1975.

Application to Transfer Denied June 9, 1975.

E. Lemoine Skinner, III, Hullverson, Hullverson & Frank, St. Louis, for plaintiffs-respondents-appellants.

John J. Cole and Richard B. Scherrer, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for defendant-appellant.

James J. Virtel, Heneghan, Roberts & Godfrey, St. Louis, for defendant-respondent.

STEWART, Judge.

We consider consolidated appeals arising out of a single trial. John Rogers, a minor, was injured when he was struck by a power lawn mower manufactured by defendant-appellant Toro Manufacturing Company, hereafter called Toro. The

mower was owned by John's grandfather, Dale E. Neiswander, now deceased. Actions were brought on behalf of John, for his injuries, by his father, James Rogers, Sr., as next friend, and by James Rogers, Sr. and his wife, Judith, as parents of John, to recover medical expenses and loss of services against Toro and against the Estate of Dale Neiswander, hereafter called Neiswander.

Toro appeals from an order of the trial court granting all plaintiffs a new trial after jury verdicts and judgments in favor of Toro and against plaintiffs. Toro contends that the trial court erred in granting plaintiffs a new trial on the ground that the court had erred in permitting Toro to introduce into evidence the "Owner's Operating and Instruction Manual". The Court also ruled that it had erred in giving erroneous converse instructions.

Plaintiffs appeal from the verdicts and judgments in favor of defendant Neiswander and against plaintiffs. They contend that the introduction of the Owner's Operating and Instruction Manual injected the issue of contributory negligence into the case and because the verdict was the result of prejudice because Toro was permitted to argue negligence on the part of James Rogers, Sr. Neiswander counters with the claim that plaintiffs did not make a submissible case against Neiswander.

The amended petition upon which the case was tried is in four counts. The first three counts are on behalf of plaintiff, John Rogers. Count I is based on the theory of strict liability in tort and directed against Toro. Count II, also directed against Toro, alleges breach of implied warranty. The essential contention of these counts is that the traction control lever on the mower was likely to and did move from the "disengage" or neutral position, to the "engage" or in gear position on its own, causing the mower to be propelled into plaintiff, John Rogers.

Count III pleads common law negligence against Toro on the theory that it negligently designed, manufactured, tested and inspected the mower, and against Neiswander on the theory that Dale Neiswander knew or should have known that the traction control lever was likely to move from "disengage" to "engage" on its own and failed to warn plaintiffs, John and James Rogers, Sr. The answers of Toro to the first three counts of the petition were essentially general denials.

In Count IV James and Judith Rogers, as the parents of John, incorporate the theories of Counts I, II and III as their action to recovery for medical expenses and loss of services against defendants. For answer to Count IV both defendants alleged the contributory negligence of both plaintiffs.

The cause was submitted by John and by his parents on the theory of strict liability as to Toro and on the theory of negligence for failure to warn as to Neiswander.

Dale Neiswander had purchased a Toro self-propelled power lawn mower from the local distributor. He received an instruction booklet which he read only to the extent necessary to complete assembly of the mower; to properly drain and refill it with oil and to operate the engage and disengage lever. He gave the booklet to Al Andrews, his yardman, who read it. The mower was used 2 or 3 times by Mr. Andrews before the incident giving rise to this litigation. Mr. Neiswander never used the mower.

Mr. Neiswander asked James Rogers, Sr., his son-in-law, to cut the grass on May 3, 1967, because Al Andrews was not available. James Rogers, Sr. went to Mr. Neiswander's home on that day accompanied by his three sons, Jim, 18, Jerry, 14, and John. James Rogers, Sr. had a power mower but had never operated a self-propelled power mower. Mr. Neiswander showed him how to start the mower; how the grass catcher was put on and removed; how to operate the traction control lever to engage and disengage the clutch mechanism. Mr. Neiswander did not give James Rogers the

instruction booklet that came with the mower.

There is a small panel just below the handhold which contains the traction control lever and the throttle control lever. The traction control is on the left side of the panel, the throttle control is on the right side. The clutch is engaged by pushing the traction control lever forward; it is disengaged by pulling it back. When disengaged the motor continues to run and the blade continues to rotate but the drive wheels do not propel the mower.

James Rogers, Sr. had cut the grass in the front yard. He was using the grass catcher. After cutting the front yard he commenced mowing the rear yard. During the process he stopped mowing on about ten occasions prior to the accident to remove and empty the grass bag. On each occasion he put the traction control lever on disengage and left the motor running. It did not move on these occasions.

Just before the accident which is the subject of this case, John was kneeling near a bush toward the rear of the backyard looking at a rabbit hole. James Rogers, Sr. stopped the mower about 15 feet from where the boy was kneeling. He testified that he put the traction control lever in neutral, removed the grass bag and carried it to the entrance of the garage, which is attached to the rear of the house. While James Rogers, Sr. was emptying the bag the mower moved forward striking John in the right foot causing the injuries.

There was evidence on the part of plaintiffs that would warrant a jury in finding that vibrations would cause the traction control lever to move from the disengage position to the engage position. Toro's expert witnesses testified to the contrary.

### APPEAL OF TORO

One of the principal points of contention in the trial was the question of the location of the mower when James Rogers, Sr. left

it to empty the grass bag. There was evidence to the effect that the ground between John and the mower was fairly level. There was also evidence that the mower was left upon an incline. The real issue, however, was whether the traction control lever was defective in design in that it moved from "disengage" to "engage" on its own causing the mower to be propelled forward striking John, irrespective of where it was positioned, or whether it moved down an incline propelled by the force of gravity alone without the clutch being engaged.

One of the grounds upon which the trial court granted a new trial was that it erred in admitting Toro's Exhibit K into evidence. Exhibit K was a sixteen page booklet put out by Toro. The cover page reading:

TORO

| Rotary Mower | Important |
| 19″ and 21″ | Oiling |
| Whirlwind | Instructions |

The first page lists 20 "Operating and Safety Instructions". After the exhibit was admitted into evidence operating instructions 4 and 5 were read into evidence by Toro's witness, Hasenbank. They read:

"4. KEEP CHILDREN OR PETS AWAY FROM EQUIPMENT WHEN ENGINE IS RUNNING.

5. NEVER LEAVE EQUIPMENT UNATTENDED WHILE ENGINE IS RUNNING."

One of Toro's witnesses also read a sentence from page 9 of the booklet under the heading "Bagging Tips":

"ALWAYS SHUT OFF ENGINE WHEN REMOVING OR REINSTALLING BAGS."

Preliminary to a discussion of the admissibility of Exhibit K we consider Toro's contentions that plaintiffs injected the instruction manual into the case and failed to make timely objection to its admission.

■ The principle Toro seeks to invoke is that of curative admissibility formerly referred to as "invited error". It comes about when a party introduces inadmissible evidence without objection which is prejudicial to another party. The other party may then rebut that evidence with like evidence in order to remove any unfair prejudice. Ferguson v. Missouri Pacific Railroad Company, 442 S.W.2d 549 (Mo.App. 1969).

■ There was evidence on the part of plaintiffs that there was an instruction booklet which James Rogers, Sr. had not seen or been aware of at the time he operated the mower. They did not seek to introduce the booklet nor any of its contents. The introduction of the contents of the booklet by Toro did not tend to rebut the evidence introduced by plaintiffs. Toro does not show us how it was prejudiced by plaintiffs' evidence. That evidence was not directed toward Toro. There was no prejudice to neutralize. The doctrine is not applicable here.

■ As to the contention that the matter is not preserved Mr. Bilhorn, on behalf of Toro, did testify that operating manuals *usually* advise that mowers should never be left unattended. However, when the exhibit was introduced plaintiffs objected to the introduction of the exhibit unless it was limited in its application to defendant Neiswander. A colloquy between the parties and the court covering some five pages of transcript makes it clear that the court was aware of the basis for the objection. Assignment 6 upon which the court granted a new trial was specifically directed to this evidence characterizing it as prejudicial. Under the circumstances we need not prolong our discussion in view of the rule in Johnson v. Kansas City Public Service Company, 360 Mo. 429, 228 S.W.2d 796, (1950) 1. c. 797:

"If matters of error are raised in a motion for a new trial, the trial court has the authority to correct its errors, within the scope of the motion, even though no objection had previously been made to the matters of which complaint is made."

If the evidence was erroneously admitted and prejudicial, the court was authorized to grant a new trial.

Toro contends that the court erred in its ruling because Exhibit K "was proper and relevant to numerous issues in the case and therefore was properly admissible". This statement fails to tell us "briefly and concisely wherein and why" the action of the trial court is erroneous as required by V. A.M.R. 84.04(d). A reading of the argument leads us to the conclusion that Toro's primary contention is that the booklet was admissible to show that the mower was not being used as the manufacturer intended. Arguing that the "written instructions supplied by a manufacturer . . . certainly reflects the manufacturer's intentions and advice as to the proper use of his product".

■ Strict liability does not equate with absolute liability. Before the defendant can be held under the theory of strict liability, plaintiff must not only prove the article was defective and thus dangerous when put to a use reasonably anticipated, he must also prove that the article was being used in a manner reasonably anticipated and that damage resulted as a direct result of the article being defective. Keener v. Dayton Electric Manufacturing Co., 445 S.W.2d 362, 366[7] (Mo.1969). Although some writers refer to "abnormal use" (a use not reasonably anticipated) as a defense to the action, it is not properly a defense but a necessary element of plaintiffs' cause of action.[1]

1. Louis R. Frumer and Melvin I. Friedman, Products Liability Sec. 15.01 (1960). Edward L. Lascher, Strict Liability in Tort for Defective Products: The Road to and Past Vandermark, 38 Southern California Law Review 30 (1965).

In many of the cases the term "use intended" has been used interchangeably with the term "use reasonably anticipated". This has resulted in some confusion. It is graphically illustrated in this case when Toro argues that the booklet "certainly reflects the manufacturer's intentions as to the proper use of his product". The use of the word "intend" gives the term a subjective connotation. "Intend" is defined as "1b(2) . . . to have in mind . . . as a purpose". Webster's Third New International Dictionary, A Merriam-Webster, (1969). On the other hand the term "use reasonably anticipated" carries with it the connotation of objectivity and more accurately announces the principle involved which is foreseeability. Even misuse may be foreseeable. Higgins v. Hardeman, 457 S.W. 2d 943 (Mo.App.1970).

Whether in strict liability in tort or in negligence, instructions or warnings, to have any effect, must warn of the dangers inherent in the failure to follow the instruction or warning. Jackson v. Baldwin-Lima-Hamilton Corp., 252 F.Supp. 529 (D.C.E.D.Pa. 1966). The question very simply put is: Does the instruction or warning adequately advise the user of the defect in the product and the dangers that can be expected from the failure to follow the instructions? Exhibit K did not advise the user that if the mower was left unattended the traction control lever would be likely to move from the engage to the disengage position and be propelled forward under its own power. The instruction booklet was not relevant for the purpose of proving that James Rogers, Sr. was making an abnormal use of the mower.

There is some suggestion that the exhibit might have been relevant to the defense of contributory negligence against the claims of Mr. and Mrs. Rogers which was in the case up to the time of submission. What we have said above, together with the undisputed evidence that Mr. Rogers was not aware of Exhibit K, effectively disposes of that contention. Jackson v. Baldwin-Lima-Hamilton Corp., *supra.*

Contributory negligence is no defense to an action in strict liability. Williams v. Ford Motor Company, 454 S. W.2d 611[10] (Mo.App.1970). We also, though redundantly, comment that any negligence of the father is not imputable to the son. Schmidt v. Allen, 303 S.W.2d 652, (Mo.1957).

The effect of the admission of Exhibit K, without limiting the purpose for which it was introduced, was to inject the element of negligence on the part of James Rogers, Sr. into the case and the consequent imputation of negligence to the child. The effect of the admission of that evidence was compounded by Toro's argument that Mr. Rogers had "violated the instruction book". Exhibit K was not admissible as to plaintiffs for the purpose of showing an abnormal use or of injecting the issue of contributory negligence into the case. The trial court acted within its discretionary power in granting a new trial on the admission of Exhibit K.

The trial court also assigned as error the giving of the converse instructions. Although briefed and argued by Toro, plaintiffs have not attempted to justify the action of the trial court. In view of the fact that this case is to be retried for the reasons set out above we do not find it necessary to rule that point.

## APPEAL OF PLAINTIFFS

The plaintiffs appeal from the judgments in favor of defendant Neiswander and against plaintiffs. They contend they are entitled to a new trial as against Neiswander for essentially the same reasons that a new trial was granted as to Toro.

At the trial Neiswander unconditionally objected to the admission of Exhibit K into evidence. Plaintiffs on the other hand had this to say:

"This I would have to object to being limited only as to Mr. Neiswander because the evidence was Mr. Rogers was never furnished this document or was the plaintiff John Rogers aware of this document. The only one that received this document would be Mr. Neiswander. I have no objection to it being read as long as the jury understands that it is for a limited purpose."

If the court had complied with plaintiffs' request the evidence would be in the case as to Neiswander to the same extent with the same force as it was in the case as tried. The case was tried by plaintiffs on the theory that the evidence was admissible as to Neiswander. Having adopted that theory in the trial court they may not now complain that as to Neiswander the evidence is inadmissible. Knight v. Firemans Insurance Co. of Newark, New Jersey, 227 Mo.App. 426, 49 S.W.2d 682[1], (1932).

Other matters not properly preserved for appellate review need not be discussed. Neaville v. Klemp, 427 S.W.2d 446 (Mo. 1968).

In view of the fact that we are affirming the action of the trial court in overruling plaintiffs' Motion for New Trial it becomes unnecessary to discuss Neiswander's contention that plaintiffs failed to make a submissible case against defendant Neiswander.

The order of the trial court granting plaintiffs a new trial as to defendant Toro is sustained. The judgment against plaintiffs and in favor of defendant Neiswander is affirmed.

SMITH, C. J., and KELLY, J., concur.