**Trina Marlene ERKSON, by her Next Friends, Martha Sperry HICKMAN and Tina Marie Erkson,**

**and**

**Tina Marie Erkson and Ricky Dean Erkson, Parents of Trina Marlene Erkson, Appellants,**

**v.**

**SEARS, ROEBUCK & COMPANY, and Roper Corporation, and Evelyn Wyatt, Respondents.**

No. WD 44766.

Missouri Court of Appeals, Western District.

Sept. 8, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1992.

Application to Transfer Denied Dec. 18, 1992.

Alfred O. Hardy, Kansas City, for appellants.

Thomas O. Baker, Kansas City, George A. Tyree, Blue Springs, for respondents.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

HANNA, Presiding Judge.

This is an appeal from an action for personal injuries brought by the next friends of a minor, Trina Marlene Erkson, and the child's parents' claims for loss of her services after an accident involving a riding lawn mower. The respondent/defendants are Evelyn Wyatt (Wyatt), the child's great-grandmother who operated the riding mower; Sears, Roebuck & Co. (Sears), the retailer; and Roper Corporation (Roper), the manufacturer. The minor, who was not quite two years of age when this accident occurred, sustained injuries when she was thrown from a riding lawn mower which then passed over a portion of her body. A jury found in favor of all plaintiffs and against all defendants, assessing sixty percent fault against retailer Sears and manufacturer Roper and forty percent fault against great-grandmother Wyatt. The child's damages were found to be $1,500,000.00 and the parents' damages were $37,100.00.

The facts leading to this accident are as follows.

In May 1981, Mrs. Wyatt and her husband purchased a riding lawn mower from Sears. It was manufactured by Roper for resale by Sears. It had an 18 horsepower engine with three forward gears and a reverse. It was also equipped with a throttle to vary the speed of the engine and a variator to further control the speed of the machine while in gear. The service brake for the wheels was operated by depressing a pedal that also engaged and disengaged the clutch and a parking brake that was not a separate brake but would, in effect, set the service brake. The engine was started by turning the engine switch. Suspended beneath the tractor seat is a "mower deck" covering three cutting blades. There is an engage-disengage lever that can be pushed forward or backward to make the cutting blades rotate or cease rotation. While the tractor is moving forward the engaged lever can be pushed forward causing the cutting blades to rotate. Another attachment can be used to raise or lower the mower deck to a pre-determined height.

Soon after the mower was purchased, Mrs. Wyatt's husband built and installed a small open, wooden box on the right fender located directly over the deck which housed the rotary mower blades. The box was used to provide a place so the Wyatts' dog could ride with Mrs. Wyatt while she was mowing. The small wooden box had approximately a 4″ ridge around both sides and the front. The back ridge of the box was a half-moon shaped piece of wood which swiveled and acted as a backrest.

Trina was visiting the Wyatts on the day of the accident.[1] After Mrs. Wyatt had mowed the back lawn she decided to give the child a ride on the mower on her way to parking it in the garage. She placed Trina in the "dog box" facing forward with her feet dangling over the edge of the box. The box had no seat belt, footrest, handle, steering wheel or anything else to restrain or hold the child in the box. Mrs. Wyatt had disengaged the mower blade before placing the child in the box and proceeded down the circular gravel driveway toward the garage. The area of the driveway on which she was traveling was level. The yard that bordered the driveway on her right was an upward incline. She had the riding lawn mower in low gear and was traveling "as slow as it would go," in a range of one to two miles per hour. She noticed a small patch of water grass on the right side of the driveway and decided to clip it off before putting the mower in the garage. She guided the mower a foot or so off to the right edge of the driveway and onto the grass incline. The remainder of the tractor was still on the driveway. As she approached the grass, she engaged the blades and while cutting the water grass, the right edge of the mower deck apparently struck a stump or hidden tree root and the tractor immediately stopped.

1. The facts relating directly to the accident were developed exclusively from Wyatt's testimony because she was the only witness to the accident and the child was just under two years of age.

Mrs. Wyatt testified that Trina was thrown off of the tractor onto the ground some three or four feet in front of the tractor.[2] Even though the forward motion of the tractor had been stopped by the impact against what was described as a tree root, the wheels continued to turn. The right-hand side of the tractor was held in its impact position and the left-hand side began to creep around in a clockwise motion. Mrs. Wyatt claims she pushed down on the brake pedal two or three times but the mower continued to move toward the child in its clockwise motion. She panicked, and without turning off the ignition, jumped off the left side of the mower and ran around the back of the mower to where the child was lying in an attempt to get her out of danger. She thought she could run around and get her out of the way before the mower crept over her. By the time Mrs. Wyatt reached the child, the mower deck had run over part of the child's foot. Mrs. Wyatt grabbed the edge of the mowing deck and lifted it off of the child. She stated that based on her experience with the mower, if she had turned off the ignition after attempting unsuccessfully to put on the brakes instead of panicking, the distance between the child and the mower blades was sufficient for the mower to have stopped prior to reaching the child.

Before trial the plaintiffs' dismissed their negligence claims against all defendants and proceeded on a strict liability theory. The plaintiffs' cause of action was submitted against defendants Sears and Roper charging the braking system was defectively designed. The plaintiffs' testimony was that the combination of lining and rivits in the brakeband was a defective design and the manufacturer's failure to equip the mower with a dead man's switch that would automatically turn off the motor when the operator left the driver's seat was also a design defect. The plaintiffs also submitted against Mrs. Wyatt although plaintiffs had settled their claim

against her and her insurance company before trial. The defendants objected to Mrs. Wyatts' continued participation in the trial but the court overruled defendants' motion. After the jury rendered its verdict against the defendants, Sears and Roper filed a motion for judgment notwithstanding the verdict or in the alternative a new trial. The plaintiffs filed a motion to amend the judgment, requesting the judgment be amended to reflect a joint liability situation between all defendants, regardless of their respective percentages of fault. After consideration of the post-trial motions, the judge overruled the plaintiff's motion to amend the judgment. Mrs. Wyatt has not appealed.

The court sustained Sears and Roper's motion for judgment notwithstanding the verdict, and in the alternative, granted Sears and Roper a new trial. The trial judge concluded that a manufacturer or vendor could not have anticipated "the bizarre and dangerous use" to which the mower was put. It also determined the mower was altered by the Wyatts by mounting the box on the fender. The court concluded the evidence did not establish any theory of liability against Sears and Roper. If it had, the evidence showed no causation between such theories and the injury and that much of plaintiff's case was based on speculation and guesswork. Further, the court stated that the baby was in a small box with no restraint in the front of her body. The wall of the box to her back would have prevented any counter-action to the forward movement of the child from taking place. The court stated "it was as if she was the stone in a slingshot."

■ The plaintiffs raise numerous points on appeal. Specifically they claim, contrary to the court's ruling on the motion notwithstanding the verdict or for a new trial, that the mower had been put to a reasonably anticipated use, that it was in substantially the same condition as when it was purchased, that the lack of the dead-

---

**2.** Other portions of Wyatt's testimony indicate the child was thrown through the air before she hit the brakes and only thrown directly in front of the mower deck and to the right of the front wheel. At one point she stated, "[the child] was already off and gone" when she applied the brakes. Finally, Wyatt admitted the child could not be thrown a great distance from the "dog box" because the mower was traveling at such a slow pace.

man's switch showed a defective design, that the evidence did establish causation and that their claims were not based on speculation. The defendant Sears contends that the use of the machine was abnormal and the plaintiffs' evidence failed to prove that either Sears or Roper anticipated or should have anticipated the use it was being put to at the time of this accident.

The first point we address is dispositive. Plaintiffs' claim the trial court erred in sustaining Sear's and Roper's motions for judgment notwithstanding the verdict because Mrs. Wyatt's use of the mower was proper or the use should have been reasonably anticipated by Sears and Roper.

As mentioned, the plaintiffs' dismissed their negligence claim and proceeded to trial on the theory of strict liability. In order for the plaintiffs to recover in strict liability, they must prove, among other elements, that the product was being used in a manner reasonably anticipated. *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 366 (Mo.1969). *See also McDowell v. Kawasaki Motors Corp.*, 799 S.W.2d 854 (Mo. App.1990).

There are certain factors critical in our determination of whether the tractor mower was put to a reasonably anticipated use. The first consideration is the young age of the child or more specifically, the age of a child who had not physically matured sufficiently to react to bumps, dips, stops, quick turns or any other number of maneuvers or actions which inevitably will occur in the operation of a tractor mower, often suddenly. In addition to the physical immaturity of the passenger, there were no restraints of any sort on this child. As indicated, the child was placed in a "dog box" which is small and open with a small ridge around the front and sides. The child's legs were hanging over the front ridge. The box had no seat belt, footrest, handle, or any other restraint or brace to hold the child in the box when Mrs. Wyatt engaged the blades to cut the grass. Finally, the child was placed in the most precarious position directly over the housing that covers the mower blades so that most any uneven ride would cause the child to be thrown in close proximity to the mower blades. Under these circumstances, Mrs. Wyatt activated the mower blades to cut a clump of grass.

The case facts here are more aggravated than those found in *Baker v. Int'l Harvester Co.*, 660 S.W.2d 21 (Mo.App.1983) where the plaintiff presented evidence that the defendant had a design defect in the combine. The plaintiff presented evidence of four separate design defects of defendant's combine. The decedent mounted the ladder of the combine while holding a gun in order to hunt. He jumped on the ladder without the knowledge of the combine operator, at a time when the combine was being used to harvest beans. The combine operator caught a glimpse of the deceased, was afraid the gun might go off and prepared to stop when he felt a bump. The deceased had fallen off and was killed when the combine ran over him. The court described this act as "a species of abnormal use which bars recovery under the doctrine of strict liability." *Id.* at 23. The court skipped the question of whether there was substantial evidence to support these allegations and held that any such design defect did not make the combine unreasonably dangerous when put to its anticipated use of harvesting grain or beans. Strict liability focuses on foreseeability or reasonably anticipated use of the combine, rather than on the reasonably anticipated harm the combine may cause. *Id.* at 23. It held the use by the decedent was not intended nor anticipated by the manufacturer. *Id.* at 23.

To the same effect, in the case at hand, notwithstanding the claimed design defect of the brake system, neither the manufacturer nor the retailer could have reasonably anticipated the factual scenario here where the tractor mower was used as a motorized baby buggy. That was not its intended use nor a use reasonably anticipated.

The strict liability tort claim is not the same as absolute liability. The plaintiff is obligated to prove that the product was defective and thus dangerous when used in a manner reasonably anticipated. *Keener, Elec.*, 445 S.W.2d at 366. No one could or should have reasonably anticipated

Mrs. Wyatt's use of the tractor. This essential element of the plaintiffs' cause of action was not proven. At the time of this accident, this machine was being used to provide a form of entertainment for the child. The fact that it was cutting a clump of grass previously missed during the mowing operation is incidental to its purpose at the time of the injury.

The plaintiffs argue that the defendants' operator manual specifically warns against carrying passengers on the mower and recommends that children and pets be kept at a safe distance from the mower. From this warning, the plaintiffs' reason that the use of the mower with a child as a passenger was foreseen by the defendants. Plaintiffs' reasoning fails under Missouri law because the warning does not contemplate the misuse of the mower that occurred here. The warning must be relevant to the dangers inherent in the failure to follow the instructions or warning. *Rogers v. Toro Mfr. Co.*, 522 S.W.2d 632, 638 (Mo.App.1975). The instruction manual appropriately warns of the obvious dangers inherent when someone other than the operator is riding on the mower. In *Rogers*, the defendant Toro attempted to use the operator's manual to prove plaintiffs' use of the mower was abnormal and not to be anticipated. The court rejected that purpose. *Id.* at 638. Here we reject the plaintiffs' argument that the manufacturer's warning provided evidence that Mrs. Wyatt's use of the mower was a species of misuse that should have been reasonably anticipated by the manufacturer. The facts here do not constitute a misuse or abnormal use which is objectively foreseeable as described in *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 381 (Mo. banc 1986).

The judgment of the circuit court is affirmed.

All concur.