# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3417

_____

DG&G, Inc.,

      Plaintiff – Appellant,

v.

FlexSol Packaging Corp. of Pompano Beach,

      Defendant – Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*
\*

_____

Submitted: June 10, 2009
Filed:  August 17, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

DG&G, Inc. appeals from a summary judgment for FlexSol Packaging Corp. DG&G also claims that the district court[1] erred in admitting unsworn exhibits, and excluding expert testimony.  Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

I.

_____

[1] The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri, who conducted the proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

In the fall of 2005, DG&G, a cotton gin operator, routinely added moisture to cotton after ginning and before baling. DG&G put the bales in polyethylene (PE) bags designed and manufactured by FlexSol. When the cotton was inspected in January 2006, it had large spots of mold. The average bale moisture was 12.83%, with the excess water unevenly applied to the cotton.

FlexSol's PE bags were approved by the National Cotton Council as satisfactory for bagging cotton. The purpose of bagging is to protect the bale from contamination. The NCC evaluates bags based on five criteria: tensile strength, thickness, elongation, resin type, and tear resistence. FlexSol's PE bags have been approved since 1998, and most recently in 2006. While the NCC requires that bag manufacturers indicate the breathability of their bags, the specifications do not consider it.

FlexSol did not warn that its bags would not allow moisture-restored cotton to breathe and equilibrate with the environment. DG&G used FlexSol bags from 2001 through 2005. In 2004, out of 45,000 bales DG&G produced, 68 bales had water damage.

DG&G used a Moisture Restoration direct spray system in its gin. DG&G asserts it closely monitored the water restored to each bale, and that its Vomax Microwave Bale Moisture Sensor reported no excess water. In September 2005, DG&G contacted Vomax to investigate whether its machine was functioning properly. A Vomax representative visited the gin twice. He found that the cotton was wet, most likely because the spray system applied water unevenly.

Two cotton marketing associations sued DG&G and related parties for the damaged bales. DG&G cross-claimed against the warehouse owner, gin-equipment manufacturers, and cotton-bag distributors and manufacturers, including FlexSol.

DG&G settled with all parties except FlexSol. Against FlexSol, DG&G claimed: 1) strict liability failure-to-warn; 2) strict liability product-defect; 3) negligence; and 4) breach of implied warranties. FlexSol moved for summary judgment, which the court granted.

## II.

DG&G claims that the district court erred in granting FlexSol's motion for summary judgment. This court reviews the district court's judgment de novo. ***Allianz Ins. Co. of Can. v. Sanftleben***, 454 F.3d 853, 855 (8th Cir. 2006). Viewing the evidence most favorably to the non-moving party, summary judgment is appropriate if there are no issues as to any material fact, and the moving party is entitled to judgment as a matter of law. ***Id***.

## A.

DG&G argues that FlexSol failed to warn that PE bags were inappropriate for moisture-restored cotton. Under Missouri law, the requirements for a strict liability failure-to-warn claim are: 1) the defendant sold the product in the course of its business; 2) the product was unreasonably dangerous at the time of the sale when used as reasonably anticipated without knowledge of its characteristics; 3) the defendant did not give an adequate warning of the danger; 4) the product was used in a manner reasonably anticipated; and 5) the user was damaged as a direct result of the product. ***Campbell v. Am. Crane Corp.***, 60 F.3d 1329, 1331 (8th Cir. 1995).

As for "direct result" causation, a failure-to-warn claimant must demonstrate: 1) the product for which there was no warning must have caused the user's damages; and 2) the user must show that a warning would have altered the behavior of those involved in the accident. ***Id***. With respect to the second component: "If there is sufficient evidence from which a jury could find that the plaintiff did not already

know of the danger, there is a presumption that a warning will be heeded." ***Tune v. Synergy Gas Corp.***, 883 S.W.2d 10, 14 (Mo. banc 1994). *See **Klugesherz v. Am. Honda Motor Co.***, 929 S.W.2d 811, 814 (Mo. App. 1996) (noting the presumption is "rebuttable"). "It is not enough for the defendant to show that the plaintiff knew of the general dangers associated with the activity; rather the defendant must show that the plaintiff knew of the specific danger that caused the injury." *See **Smith v. Brown & Williamson Tobacco Corp.***, 275 S.W.3d 748, 785 (Mo. App. 2008), *citing **Cole v. Goodyear Tire & Rubber Co.***, 967 S.W.2d 176, 184 (Mo. App. 1998).

> Manufacturers and distributors are not under a duty to provide warnings about dangers which are open and obvious, or which are commonly known. If the user of a product knows or reasonably may be expected to know of a particular danger, strict liability will not result from a failure to warn of that danger.

***Grady v. Am. Optical Corp.***, 702 S.W.2d 911, 915 (Mo. App. 1985) (citations omitted).

DG&G asserts that, without a warning, it had no knowledge that the PE bags' lack of permeability would cause damage when used with the moisture restoration system. DG&G admits, however, that the cotton industry "was well aware of PE bags' shortcomings in breathability." DG&G knew that bagging cotton with excess moisture would damage the bale – in 2004, DG&G had 68 bales with water damage. During the 2005 season, DG&G called a Vomax representative to check on the moisture sensor. The gin manager expressed a concern that "the readings were too consistent," and that the machine may be improperly measuring the moisture added to the cotton. DG&G had used FlexSol's bags since 2001, and knew or reasonably may be expected to have known of the specific danger of bagging cotton with excess moisture in PE bags. *See **Campbell***, 60 F.3d at 1333 (holding that a crane operator with many years of experience "can have reasonably been expected to know of the

open and obvious danger" of performing maintenance on the crane). The district court properly dismissed DG&G's strict liability failure-to-warn claim.

## B.

DG&G claims that FlexSol's PE bags were defective. Under Missouri law, the requirements of a strict liability defective-product claim are: 1) the defendant sold the product in the course of its business; 2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) the user was damaged as a direct result of the product. *Lay v. P&G Health Care, Inc.*, 37 S.W.3d 310, 325 (Mo. App. 2000).

"Strict liability does not equate with absolute liability." *Rogers v. Toro Mfg. Co.*, 522 S.W.2d 632, 637 (Mo. App. 1975). The claimant must prove that the product "was being used in a manner reasonably anticipated." *Id*. "The concept of reasonably anticipated use, however, includes misuse and abnormal use which is objectively foreseeable." *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 381 (Mo. banc 1986).

DG&G argues that it put FlexSol's bags to a reasonably anticipated use. In 2004, the NCC recommended to all ginners: 1) 7.5% moisture content should be a ceiling, and not a target; and 2) an average level of 7.5% could be excessive if the moisture is not uniformly distributed. DG&G's cotton had moisture distributed unevenly throughout the bales, and registered an average bale moisture of 12.83%. *See* *Mich. Millers Mut. Ins. Co. v. DG&G Co., Inc.*, 569 F.3d 807, 812 (8th Cir. 2009) ("[W]e agree with the district court that there is no genuine issue as to the material fact that at least some of the property damage occurred at the gin when DG&G added so much excess moisture that the cotton was 'not merchantable' when

it left the gin . . . ."). Bagging DG&G's excessively-water-packed cotton is not a reasonably anticipated use of FlexSol's PE bags.

According to DG&G, the PE bags have an alternative reasonably anticipated use – allowing the moisture level of cotton to equilibrate with the atmosphere. FlexSol's bags were approved by the NCC. The NCC specifications for the PE bags do not require that they dry moisture-restored cotton – FlexSol's bags were approved based on their tensile strength, thickness, elongation, resin type, and tear resistance. While the NCC requires that bag manufacturers indicate the breathability of the bags produced, the specifications do not consider it. The bags are manufactured to protect cotton bales from contamination. There is no support for DG&G's theory that it reasonably used the bags for their moisture vapor transmission rate.

DG&G also states that using the bags to transfer moisture was a "misuse or abnormal use" that was objectively foreseeable. DG&G acknowledges that the cotton "industry was well aware of PE bags' shortcomings in breathability." Based on the industry standard, it is not *objectively* foreseeable that DG&G would use the bags because of their breathability. *See **Nesselrode***, 707 S.W.2d at 381 (considering the "reasonably anticipated" use of a product with respect to the "industry standard").

In sum, DG&G has failed to demonstrate that it put the bags to a reasonably anticipated use. The district court properly granted FlexSol's motion for summary judgment on the strict liability defective-product claim.

C.

Because DG&G did not establish a reasonably anticipated use, DG&G's negligence and implied warranty claims were properly dismissed. *See **Welsh v. Bowling Elec. Mach., Inc.***, 875 S.W.2d 569, 572-74 (Mo. App. 1994) (negligence theory requires the plaintiff establish that the product was foreseeably dangerous when

put to a reasonably anticipated use); ***Howard Constr. Co. v. Bentley Trucking, Inc.***, 186 S.W.3d 837, 842 (Mo. App. 2006) (breach of implied warranty theory requires that the "ordinary purpose" for which the goods are used "are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question") (internal citations omitted).

## III.

DG&G also alleges that the district court erred by considering unsworn reports from an expert, William S. Anthony. FlexSol introduced unverified documents into the record. DG&G objected. FlexSol later provided Anthony's affidavit verifying his reports, and the district court found that the documents were "cured" for summary judgment.

"To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." ***Shanklin v. Fitzgerald***, 397 F.3d 596, 602 (8th Cir. 2005) (internal quotations omitted). The district court has broad discretion in permitting supplementation of the summary judgment record, which this court reviews for abuse-of-discretion. *See* ***African Am. Voting Rights Legal Defense Fund, Inc. v. Villa***, 54 F.3d 1345, 1350 (8th Cir. 1995). *See also* ***Morgan v. United Parcel Serv. of Am., Inc.***, 380 F.3d 459, 467-68 (8th Cir. 2004) (stating that this court "defer[s] to admissibility determinations under an abuse-of-discretion standard of review, even at summary judgment").

DG&G cites other circuits that hold that unsworn expert reports are not admissible for summary judgment purposes. *See* ***Carr v. Tatangelo***, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003); ***Scott v. Edinburg***, 346 F.3d 752, 759 (7th Cir. 2003).

Those cases, however, do not address whether a court can consider documents "cured" by a subsequent affidavit.

"The district court has discretion whether to accept or reject such untimely filed materials." *Villa*, 54 F.3d at 1350, *citing Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 894-98 (1990). *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (holding that the district court abused its discretion in excluding unsworn documents because the plaintiff should have been allowed to obtain a curative affidavit); c*f. Fowle v. C&C Cola*, 868 F.2d 59, 67 & n.4 (3d Cir. 1989) (rejecting unsworn exhibits, noting that "we are swayed in this case that the defendants raised this issue in the district court, and plaintiff did nothing *to correct the error* before that court") (emphasis added).

A number of district courts have permitted affidavits to cure previously unsworn materials. *See Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (unpublished) ("Despite the potential inappropriateness of submitting the unsworn report of a party's own expert to support or oppose a summary judgment motion, such a defect is, as plaintiffs argue, curable through the submission of an affidavit or a declaration verifying the report's contents."); *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006), *aff'd on other grounds*, No. 2007-1015, 2007 WL 1426725, at *1 (Fed. Cir. May 10, 2007) (per curiam) (unpublished); *Kidder, Peabody & Co., Inc. v. IAG Intern. Acceptance Group, N.V.*, 28 F. Supp. 2d 126, 130 (S.D.N.Y. 1998), *aff'd on other grounds*, 205 F.3d 1323 (2d Cir. 1999); *Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 183 n.1 (E.D.N.Y. 2001); *Gache v. Town of Harrison, N.Y.*, 813 F. Supp. 1037, 1052 (S.D.N.Y. 1993).

In the present case, the district court permitted FlexSol to supplement the summary judgment record with Anthony's affidavit. "[S]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." *Maytag*, 448 F. Supp. 2d at 1064. This court concludes that the district court did not abuse its discretion in considering the cured documents.

DG&G also objects that the expert reports should not have been considered because Anthony was a retained expert for a settling party, never produced for deposition. DG&G cites no authority prohibiting the use of another party's expert report for summary judgment purposes. The record demonstrates that DG&G had an opportunity to depose Anthony when the settling party identified him as a retained expert, and when FlexSol identified him as a non-retained expert.

IV.

DG&G argues that the district court improperly excluded the expert testimony of Robert J. Bockserman. A district court's decision to exclude expert testimony is reviewed for abuse-of-discretion. ***Bland v. Verizon Wireless***, 538 F.3d 893, 896 (8th Cir. 2008). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

**Fed. R. Evid. 702**. There are four non-exclusive factors that the district court may consider: 1) whether the theory or technique can be or has been tested; 2) whether the

theory or technique has been subjected to peer review and publication; 3) the known or potential rate for error; and 4) whether the theory or technique has received general or widespread acceptance. ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 593-94 (1993).

In this case, Bockserman tested the water vapor transmission rates using the ASTM International Test Method E-96-05, "Standard Test Methods for Water Vapor Transmission of Materials." This method required that four specimens be tested. Unaware of this requirement, Bockserman tested only three specimens. More importantly, he did not know how additional tests would affect the final numbers. He also failed to use a dummy specimen, as required. Finally, he did not test any FlexSol PE bags, and his report was not peer reviewed. The district court did not abuse its discretion in excluding Bockserman's testimony.

V.

The judgment of the district court is affirmed.

_____

-10-