*Richardson v. Correctional Medical Care, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> REENA RAGGI,
> SUSAN L. CARNEY,
> > *Circuit Judges*.

_____

BERNITA RICHARDSON, AS ADMINISTRATRIX OF THE ESTATE OF JIMMY RICHARDSON,

> *Plaintiff-Appellant*,

> v.                                                        22-210

CORRECTIONAL MEDICAL CARE, INC., CBH MEDICAL, P.C., EMRE UMAR, AND DR. RUSSELL FRICKE

> *Defendants-Appellees*.[*]

_____

For Plaintiff-Appellant:                    ELMER ROBERT KEACH, III, Law Offices of Elmer Robert Keach, III, PC, Albany, N.Y.

---

[*] The Clerk of Court is respectfully directed to amend the official caption as listed above.

For Defendants-Appellees Correctional Medical Care, Inc., CBH Medical, P.C., and Emre Umar:

JONATHAN E. SYMER, Steinberg, Symer & Platt, LLP, Poughkeepsie, N.Y.

For Defendant-Appellee Russell Fricke:

KAREN A. BUTLER (Jonathan Wood, *on the brief*), Maynard O'Connor Smith & Catalinotto, LLP, Albany, N.Y.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 4, 2022 judgment of the district court is **REVERSED IN PART** and **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant Bernita Richardson ("Ms. Richardson"), acting as administratrix of her late husband Jimmy Richardson's ("Mr. Richardson") estate, appeals from the district court's grant of summary judgment in favor of Defendants-Appellees Correctional Medical Care, Inc., CBH Medical P.C. (collectively, "CMC") and Russell Fricke ("Dr. Fricke," and together with CMC, the "Appellees") on her claims for medical malpractice and wrongful death.[1] Ms. Richardson alleges that Mr. Richardson's sudden death while incarcerated at the Schenectady County Correctional Facility ("SCCF") was the result of substandard medical care he received from the Appellees. The district court ruled against Ms. Richardson on her state-law medical malpractice and wrongful death claims principally because it found her expert medical evidence to be inadmissible.[2] We

---

[1] Although Ms. Richardson's notice of appeal also named Emre Umar ("Umar"), she makes no mention of him, whatsoever, in her appellate brief. Accordingly, Ms. Richardson has abandoned her claims against Umar. *See Gerstenbluth v. Credit Suisse Secs. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013).

[2] The district court also denied Dr. Fricke's motion for summary judgment as to Ms. Richardson's claim for deliberate indifference to Mr. Richardson's serious medical needs under 42 U.S.C. § 1983. This facet of the judgment is not at issue in this appeal, as, on the eve of trial, the district court dismissed this

presume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we relay only as necessary to explain our decision to reverse.

\* \* \*

The parties offered dueling medical experts purporting to establish the cause of Mr. Richardson's death and whether CMC and Dr. Fricke deviated from the standard of care in their treatment of Mr. Richardson while he was at SCCF. The district court credited the opinion of the Appellees' medical expert Dr. Roland T. Phillips ("Dr. Phillips") but determined that the opinion of Ms. Richardson's medical expert Dr. Bruce Charash ("Dr. Charash") was inadmissible because Ms. Richardson did not submit this report in admissible form, and the opinion was too speculative to give rise to a genuine dispute as to the cause of Mr. Richardson's death. This was error.

We review a district court's decision to exclude expert testimony for abuse of discretion. *See Sarkees v. E.I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021). "Either an error of law or a clear error of fact may constitute an abuse of discretion." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (quoting *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 224 (2d Cir. 1999)). A district court does not abuse its discretion in excluding a proposed expert unless the decision is "manifestly erroneous." *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 175 (2d Cir. 2008) (internal quotation marks omitted).

## I.    Format

The district court faulted Ms. Richardson for submitting Dr. Charash's expert opinion in the form of an unsworn letter. "[U]nsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment." *Capobianco*

---

claim with prejudice pursuant to an agreement between the parties.

*v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (citations omitted); *see also* Fed. R. Civ. P. 56(c). That is not necessarily the end of the inquiry, however, as "[s]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539 (4th Cir. 2015) (quoting *DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009)); *accord Monahan v. City of New York*, No. 20 Civ. 2610 (PKC), 2023 WL 2138535, at *4 (S.D.N.Y. Feb. 21, 2023) ("Unsworn letters and reports may be admissible only when the opinions expressed in such documents are reaffirmed by deposition testimony." (internal quotation marks omitted)); *Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 182 n.4 (S.D.N.Y. 2020) (same).

Dr. Charash reaffirmed his opinion during his deposition, repeatedly emphasizing in his testimony that Mr. Richardson's medical history and symptomology in the days leading up to his death made it imperative that someone check the functionality of his implantable cardioverter-defibrillator ("ICD"). The district court, nevertheless, deemed Ms. Richardson's failure to submit a sworn expert report to be "inexcusable," in relevant part because Ms. Richardson made no attempt to cure this deficiency by submitting a sworn report after the court ordered the parties to submit courtesy copies of their expert disclosures. Nowhere in the district court's order, however, did the court suggest that it perceived a fatal deficiency in the form of Ms. Richardson's expert evidence, and it is not clear to us that Ms. Richardson should have interpreted the district court's order as seeking additional sworn affirmation. In any event, because Dr. Charash verified

4

his expert opinion with his sworn deposition testimony, to the extent the district court excluded his opinion for not being in the form of an affidavit, this was an abuse of discretion.[3]

## II. Reliability

The district court also found Dr. Charash's opinion too speculative to be admissible. Whether Dr. Charash's expert opinion should have been excluded is governed by the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The proponent of expert testimony bears the burden of establishing admissibility, with the district court serving a gatekeeping role to ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert*, 509 U.S. at 597). While the district court's discretion in exercising this gatekeeping function is "considerable, it is not unfettered." *Id*. "The 'gatekeeping' function under *Daubert* is fundamentally about 'ensur[ing] the reliability and relevancy of expert testimony,' and district courts may not stray from those goals." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The ultimate objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

---

[3] The Appellees note that the transcript of Dr. Charash's deposition testimony included in the record is "unexecuted," but do not otherwise challenge the transcript's authenticity. Although Dr. Charash did not execute a certificate of authentication, the court reporter, who is also a notary public, did and certified that the transcript is a true and correct record of Dr. Charash's deposition. App'x 1209. Absent any indication that the deposition transcript in the record is inauthentic, we see no reason to exclude Dr. Charash's expert evidence on this basis.

In excluding Dr. Charash's opinion, the district court strayed from its role as the gatekeeper of reliable and relevant expert evidence into the realm of resolving contested issues of fact. The district court's primary error consisted of affording conclusive weight to Dr. Phillips's opinion as to the cause of Mr. Richardson's death, while failing to identify any basis for concluding that Dr. Charash's different opinion was not "based on sufficient facts or data," or was not "the product of reliable principles and methods" that were "reliably applied" to the facts of this case. Fed. R. Evid. 702. And, for the reasons described below, the faults the district court *did* identify in Dr. Charash's expert opinion go to its weight, rather than its admissibility. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith . . . , other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." (internal quotation marks and citations omitted)); *cf. Scott v. Coughlin*, 344 F.3d 282, 290 (2d Cir. 2003) ("The credibility of [the plaintiff]'s statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

The district court found that Dr. Charash's opinion that Mr. Richardson died because of a primary ICD failure was based entirely on the conclusory assertion that the fact of Mr. Richardson's death was "near proof of" this theory. But in isolating this component of Dr. Charash's opinion, the district court ignored the bulk of the evidence that Dr. Charash relied upon to develop his opinion. As support for an ICD malfunction, Dr. Charash cited Mr. Richardson's diagnosis with Brugada Syndrome, his family history of sudden death, and his documented episodes of chest pain, dizziness, and low blood pressure. Thus, the fact that Mr. Richardson's autopsy lacked indicia of a mechanically catastrophic event served merely as further support for Dr. Charash's opinion.

6

The district court also considered Dr. Charash's opinion inadequate because he failed to rebut specific factual contentions in Dr. Phillips's expert report. The court accepted Dr. Phillips's reasons for "rul[ing] out" a primary ICD failure but ignored the basis for Dr. Charash's conflicting opinion and his rejoinders to Dr. Phillips. For instance, Dr. Charash explained that even assuming that ICD failures are relatively infrequent, as Dr. Phillips contended, the risk remains high enough for clinicians to recommend periodic ICD interrogations, typically at three-month intervals. Dr. Charash further testified as to how an ICD could malfunction even if its leads are intact, as Mr. Richardson's were at his time of death. The district court is correct that Dr. Charash did not review the entirety of Mr. Richardson's cardiac history, but this hardly renders his opinion without basis. Dr. Charash concluded that Dr. Phillips offered a "less clinically viable scenario" for Mr. Richardson's sudden death because the record lacked evidence that Mr. Richardson suffered from the health conditions that Dr. Phillips claimed caused his death, namely chronic obstructive pulmonary disorder with respiratory arrest outbursts or bronchopneumonia. App'x 1198. The district court did not acknowledge Dr. Charash's reasoned basis for questioning Dr. Phillips's opinion.

In sum, neither of the medical experts offered a definitive opinion that conclusively establishes the cause of Mr. Richardson's death. There was not, however, "too great an analytical gap between the data and the opinion[s] proffered" to warrant exclusion of either. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). By excluding Dr. Charash's opinion, the district court deprived Ms. Richardson the opportunity to present her case to a jury tasked with assessing the credibility of the parties' competing experts and determining the weight that should be afforded to their opinions.

Because the district court did not identify a proper basis to exclude Dr. Charash's expert opinion, we conclude that it is admissible. With this expert testimony available for trial, the Appellees' motions for summary judgment as to Ms. Richardson's claims for medical malpractice and wrongful death should be denied. Of course, Dr. Charash remains subject to cross-examination and his opinion may be challenged by opposing evidence. Ultimately, however, the credibility, weight, and persuasive force of Dr. Charash's evidence is an issue for the jury to decide. *See Sarkees*, 15 F.4th at 593.

\*     \*     \*

We have considered CMC and Dr. Fricke's remaining arguments and find them to be without merit. Accordingly, we **REVERSE IN PART** the judgment of the district court as to Ms. Richardson's claims for medical malpractice and wrongful death against CMC and Dr. Fricke and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court