**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1134

SANDLANDS C&D LLC; EXPRESS DISPOSAL SERVICE LLC,

Plaintiffs - Appellants,

v.

HORRY, COUNTY OF, a Political Subdivision of the State of South Carolina acting by and through its duly elected County Council; HORRY COUNTY SOLID WASTE AUTHORITY INC.,

Defendants – Appellees.

---------------------------

DELAWARE COUNTY SOLID WASTE AUTHORITY; ECOMAINE; CITY AND COUNTY OF HONOLULU; INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION; LANCASTER COUNTY SOLID WASTE MANAGEMENT AUTHORITY; MARION COUNTY, OREGON; MONTGOMERY COUNTY, OHIO; NATIONAL ASSOCIATION OF COUNTIES; SOLID WASTE ASSOCIATION OF NORTH AMERICA; SOLID WASTE AUTHORITY OF CENTRAL OHIO; SOLID WASTE DISPOSAL AUTHORITY OF THE CITY OF HUNTSVILLE; SOUTH CAROLINA ASSOCIATION OF COUNTIES; SOLID WASTE AUTHORITY OF PALM BEACH COUNTY; PINE BELT REGIONAL SOLID WASTE MANAGEMENT AUTHORITY; SPOKANE REGIONAL SOLID WASTE SYSTEM; WASATCH INTEGRATED WASTE MANAGEMENT DISTRICT; YORK COUNTY SOLID WASTE AND REFUSE AUTHORITY,

Amici Supporting Appellees.

Appeal from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, Chief District Judge. (4:09-cv-01363-TLW)

Argued: October 31, 2013                Decided: December 3, 2013

Before WILKINSON, DUNCAN, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

_____

**ARGUED:** Vincent Austin Sheheen, SAVAGE, ROYALL & SHEHEEN, LLP, Camden, South Carolina, for Appellants. Michael Warner Battle, BATTLE & VAUGHT, PA, Conway, South Carolina, for Appellees. **ON BRIEF:** Thomas S. Mullikin, MULLIKIN LAW FIRM, LLC, Camden, South Carolina, for Appellants. Emma Ruth Brittain, THOMAS & BRITTAIN, P.A., Myrtle Beach, South Carolina; Stan Barnett, SMITH, BUNDY, BYBEE & BARNETT, Mt. Pleasant, South Carolina, for Appellees. Scott M. DuBoff, Jeffrey C. Young, GARVEY SCHUBERT BARER, Washington, D.C., for Amici Curiae. Michael F.X. Gillin, Media, Pennsylvania, for Amicus Curiae Delaware County Solid Waste Authority. Nicholas Nadzo, Mark Bower, JENSEN BAIRD GARDNER & HENRY, Portland, Maine, for Amicus Curiae ecomaine. Dana Viola, Deputy Corporation Counsel, Department Of Corporation Counsel, CITY AND COUNTY OF HONOLULU, Honolulu, Hawaii, for Amicus Curiae City and County of Honolulu. Alex Henderson, HARTMAN UNDERHILL & BRUBAKER, Lancaster, Pennsylvania, for Amicus Curiae Lancaster County Solid Waste Management Authority. Scott Norris, Assistant Legal Counsel, Marion County, Oregon, for Amicus Curiae Marion County, Oregon. Mathias H. Heck, Jr., Montgomery County, Ohio Prosecuting Attorney, Dayton, Ohio, for Amicus Curiae Montgomery County, Ohio. Michael Belarmino, Associate General Counsel, NATIONAL ASSOCIATION OF COUNTIES, Washington, D.C., for Amicus Curiae National Association of Counties. Moran M. Pope, III, POPE & POPE, P.A., Hattiesburg, Mississippi, for Amicus Curiae Pine Belt Regional Solid Waste Management Authority. Barry Shanoff, Rockville, Maryland, for Amicus Curiae Solid Waste Association of North America. Michael C. Mentel, Chief Legal Officer, SOLID WASTE AUTHORITY OF CENTRAL OHIO, Grove City, Ohio, for Amicus Curiae Solid Waste Authority of Central Ohio. M. Clifton Scott Jr., Senior Staff Attorney, SOUTH CAROLINA ASSOCIATION OF COUNTIES, Columbia, South Carolina, for Amicus Curiae South Carolina Association of Counties. Elizabeth Schoedel, Assistant City Attorney, CITY OF SPOKANE, Spokane, Washington, for Amicus Curiae Spokane Regional Solid Waste System. Charles H. Younger, Huntsville, Alabama, for Amicus Curiae Solid Waste Disposal Authority of the City of Huntsville, Alabama.

_____

DUNCAN, Circuit Judge:

Appellants Sandlands C&D, LLC ("Sandlands") and Express Disposal Service, LLC ("EDS") contest the validity of Horry County's Flow Control Ordinance, which prohibits disposal of waste generated in Horry County at any site other than a designated publicly owned landfill. The district court granted summary judgment in favor of Horry County, and appellants challenge its determination that the Ordinance violates neither the Commerce Clause nor the Equal Protection Clause. For the reasons that follow, we affirm.

I.

A.

Horry County occupies the northernmost coastal section of South Carolina. Because of its sixty-mile coastline, large geographic size, seasonal population changes, and high water table, landfill waste disposal has been "expensive and difficult." See Horry Co., S.C., Ordinance 60-90, § 1 (Dec. 21, 1990). Consequently, in 1990 the County Council established the Horry County Solid Waste Authority, Inc. ("SWA"), a nonprofit corporation, to manage the county's solid waste. Id. § 1.4. Although the SWA is a separate legal entity, Horry County maintains power over it in multiple ways: approving its budget, large capital expenditures, and real estate transactions;

3

appointing its board of directors; wielding approval authority over all bylaw amendments; and requiring that the Horry County Treasurer hold all its funds and issue its checks. Furthermore, the IRS categorizes the SWA as a "governmental unit" or "affiliate of a governmental unit." On appeal, it is undisputed that the SWA is a public entity.

The SWA owns and operates two landfills (one for municipal solid waste and one for construction and demolition ("C&D") waste) and a recycling facility in Horry County. In addition, the SWA sponsors educational programs on recycling and runs a green power facility that harnesses the methane gas emitted by landfills to generate electricity. The SWA charges haulers and others who use its landfills "tipping fees" based on the tonnage of trash deposited. These fees, which are standard in the waste-disposal industry, provide revenue to fund SWA operations. Haulers who recycle a specified percentage of the waste they collect pay a reduced tipping fee through an application-based recycling incentive program.

On March 17, 2009, the Horry County Council enacted Ordinance 02-09 ("Flow Control Ordinance" or "Ordinance") to create a county-wide plan for solid waste disposal. Horry Co., S.C., Ordinance 02-09 (Apr. 7, 2009). The final version of the Flow Control Ordinance, as amended on April 7, 2009, provides:

4

> The County hereby designates the disposal facilities operated by the SWA and/or public owned facilities designated by the SWA for the acceptance or disposal of acceptable waste. The dumping or depositing by any person at any place other than at the designated facilities of any acceptable waste generated within the County is prohibited.

Id. § 2.1.1. By requiring that all acceptable waste be disposed of at SWA or other designated public landfills, the Ordinance aims to conserve resources, prevent pollution, and protect the public health, safety, and well-being. Id. § 1.1. It also ensures the SWA a revenue stream from the tipping fees haulers must pay to deliver waste.

To effect its objectives, the Ordinance sets out a detailed regulatory and enforcement framework. It defines the term "acceptable waste" as "ordinary household, municipal, institutional, commercial and industrial solid waste" excluding recyclables as well as hazardous waste, sewage, agricultural waste, biomedical waste, and certain types of nuclear waste. Id. §§ 1.2.1, 1.2.14 (defining acceptable and unacceptable waste); §§ 6.1.2, 7.1.2, 8.1.5 (excluding recyclables). It also sets out rules and licensing requirements for waste haulers. Id. §§ 9–10.

The Flow Control Ordinance has been largely successful in ensuring that waste generated in Horry County is deposited at an approved landfill within the county. According to the South Carolina Solid Waste Management Annual Reports from 2009, 2010,

and 2011, an SWA facility processed 689,708 out of 691,552 tons, or over 99% of the waste generated in the county during those years.  J.A. 196-205.[1]

The remaining 1,844 tons of waste were taken to four landfills outside of the county: the Georgetown County Landfill, the Berkeley County W&S Landfill, the Oakridge Landfill, and the Richland Landfill.  Horry County and Georgetown County have an intergovernmental waste-sharing agreement, predating the enactment of the Flow Control Ordinance, under which waste collected near the counties' shared border may be taken to the other county's government-operated landfills.  According to the SWA, much of the waste taken to the other landfills was not "acceptable waste" under the Flow Control Ordinance--in other words, it was waste, such as the hazardous material asbestos, that the SWA landfills cannot process.  Horry County also acknowledged that some waste may have been removed from the county without the SWA's knowledge or consent.

### B.

The enactment of the Flow Control Ordinance altered the local economy of waste management.  For example, Sandlands, which operates a private landfill for C&D waste in neighboring Marion County, South Carolina, saw a significant decrease in its

---

[1] References to the Joint Appendix are abbreviated "J.A."

business.  Because the Sandlands landfill is located only two miles from the Horry County border, a significant portion of the waste deposited there used to originate in Horry County.  The Ordinance now prohibits haulers from bringing Horry County waste to the Sandlands landfill in order to take advantage of its lower tipping fees.  Sandlands has since struggled financially because of its inability to replace the revenue stream lost as a result of the Ordinance.

EDS operates a waste hauling service in southeastern North Carolina and northeastern South Carolina.  Prior to the passage of the Flow Control Ordinance, EDS transported waste from Horry County to the Sandlands landfill and received certain benefits as a result, such as increased hours of access and special, lower tipping fees.  EDS has been issued at least seventeen citations for violating the Flow Control Ordinance.

As an alternate business strategy, Sandlands attempted to open a facility to process recovered materials[2] at its Marion County site, where it would have sorted general C&D debris into recyclable materials and landfill-ready waste.  When Sandlands requested permission from Horry County to remove mixed C&D

---

[2] Recovered materials are "materials or substances that still have useful physical or chemical properties after serving a specific purpose and can be reused or recycled for the same or other purposes."  Horry Co., S.C., Ordinance 02-09, § 1.2.11 (Apr. 7, 2009).

7

debris for this purpose, a representative from the Horry County Attorney's Office responded, "[D]ebris from a construction site that simply contains materials that have not yet been separated is still solid waste and is subject to the requirements of the ordinance."  J.A. at 69.  No company has been allowed to take mixed waste generated in Horry County outside of the county, although two other companies extract recoverable materials from acceptable waste at small transfer stations within Horry County.

C.

Appellants brought an action for declaratory judgment, damages, and injunctive relief in South Carolina state court, which Horry County removed to federal court.  Among other claims, appellants argued that the Flow Control Ordinance violates the Equal Protection Clauses of the United States and South Carolina Constitutions, the Commerce Clause of the United States Constitution, and the Contract Clauses of the United States and South Carolina Constitutions.[3]  After a hearing, the district court granted Horry County's motion for summary

---

[3]  In their amended complaint, appellants also alleged a variety of constitutional, statutory, and torts claims.  In addition, appellants argued that the Flow Control Ordinance is preempted by the South Carolina Solid Waste Policy and Management Act, S.C. Code Ann. § 44-96-10, et. seq.  The district court certified that question to the South Carolina Supreme Court, which responded that it was not preempted.

8

judgment as to each of the causes of action. This appeal followed.

## II.

Appellants contest the district court's rulings on the validity of the Flow Control Ordinance under the Commerce Clause and Equal Protection Clause of the U.S. Constitution.[4] As to the "Dormant" Commerce Clause, appellants argue that the district court erred by failing to analyze whether the Flow Control Ordinance is facially discriminatory, by misapplying the test laid out in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), and by ignoring genuine disputes of material fact at the summary-judgment stage. As to the Equal Protection Clause, appellants contend that summary judgment is not appropriate because there remain genuine disputes of material fact regarding whether private companies are subject to differential treatment under the Flow Control Ordinance.

We review de novo the district court's grant of summary judgment. Building Graphics, Inc. v. Lennar Corp., 708 F.3d 573, 578 (4th Cir. 2013). Summary judgment is appropriate when the moving party shows that there is no genuine dispute of

---

[4] Appellants do not mention a separate South Carolina Equal Protection Clause claim in their appellate brief, so they have waived this state law claim. Fed. R. App. P. 28(a)(8).

material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A.

Appellants first argue that the Flow Control Ordinance violates the Commerce Clause of the U.S. Constitution, which gives Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has interpreted the Commerce Clause as also having a negative implication, often called the "Dormant Commerce Clause": states generally cannot pass protectionist measures that favor in-state actors over out-of-state actors. See, e.g., Or. Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994); City of Philadelphia v. New Jersey, 437 U.S. 617, 623–24 (1978). The Supreme Court has also used the Dormant Commerce Clause to invalidate locally protectionist measures that target all outsiders, not just those from other states. See, e.g., Dean Milk Co. v. City of Madison, 340 U.S. 349, 353 (1951) (invalidating under the Dormant Commerce Clause a municipal ordinance that forbade the sale of milk unless it was pasteurized within five miles of the city center).

We begin our Dormant Commerce Clause analysis by "ask[ing] whether a challenged law discriminates against interstate commerce." Dep't of Revenue v. Davis, 553 U.S. 328, 338 (2008).

10

When a restriction on commerce is discriminatory--that is, it benefits in-state economic interests while burdening out-of-state economic interests--"it is virtually per se invalid." Or. Waste Sys., 511 U.S. at 99. The state may only overcome the presumption of unconstitutionality by showing that the protectionist measure serves a legitimate local purpose that could not be served by alternate, nondiscriminatory means. Davis, 553 U.S. at 338; see also Maine v. Taylor, 477 U.S. 131, 138-40 (1986). "Absent discrimination for the forbidden purpose," a statute affecting interstate commerce is subject to the balancing test laid out in Pike. Davis, 553 U.S. at 338. In such a case, the law "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142.

The recent Supreme Court decision in United Haulers Ass'n v. Oneida-Herkimer Solid Waste Management Authority, 550 U.S. 330, 346 (2007), is not only instructive, it is largely dispositive of appellants' Dormant Commerce Clause claims. In United Haulers, the Court upheld Oneida and Herkimer Counties' flow control ordinances, which are remarkably similar to the one at issue here. The Oneida and Herkimer ordinances also "require[d] haulers to bring waste to facilities owned and operated by a state-created public benefit corporation." 550 U.S. at 334. The Court first determined that the challenged

11

flow control ordinances are not discriminatory because they favor the government while treating all private parties the same. Id. at 345. Then, a plurality of the Court determined that they withstood the Pike balancing test. Id. at 347. We now apply United Haulers to the facts before us.

1.

First, we must determine whether the Flow Control Ordinance discriminates against interstate commerce. A statute will almost always violate the Dormant Commerce Clause if it "discriminates facially, in its practical effect, or in its purpose." McBurney v. Young, 667 F.3d 454, 468 (4th Cir. 2012) (internal quotations and citations omitted). In United Haulers, the Supreme Court determined that flow control ordinances favoring the government while "treat[ing] in-state private business interests exactly the same as out-of-state ones[] do not 'discriminate against interstate commerce' for purposes of the dormant Commerce Clause." 550 U.S. at 345.

As the Supreme Court reiterated in Davis, "a government function is not susceptible to standard dormant Commerce Clause scrutiny owing to its likely motivation by legitimate objectives distinct from the simple economic protectionism the Clause

abhors." 553 U.S. at 341.[5] Trash disposal is a traditional function of local government, so county waste-management ordinances can permissibly distinguish between private businesses and those controlled by states, counties, and municipalities. See United Haulers, 550 U.S. at 342, 344. Like the ordinances in United Haulers, the Horry County Flow Control Ordinance "benefit[s] a clearly public facility." 550 U.S. at 342.

We now consider whether the Flow Control Ordinance treats all private businesses alike. Appellants argue that it does not and should thus be subject to the rule of per se invalidity for discriminatory statutes under Oregon Waste Systems, 511 U.S. at 99. We reject each of their arguments because the record does not indicate that appellants have been treated differently from other private businesses.

Appellants contend that the Sandlands landfill has been treated differently from the landfill owned by neighboring Georgetown County, because that facility has continued to receive waste from Horry County, despite not being designated under the Ordinance. Under the Dormant Commerce Clause,

---

[5] We decline appellants' invitation to hunt for a discriminatory purpose in the Flow Control Ordinance's legislative history and County Council members' post hoc statements.

however, the question is whether Sandlands has been treated differently from other private businesses--not other public entities. Appellants' argument that there is no justification for differential treatment of public and private landfills misapprehends the public-private distinction articulated in United Haulers, which definitively distinguished the government-favoring Oneida and Herkimer ordinances from an ordinance favoring a private facility that was struck down in C&A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383 (1994). See 550 U.S. at 341.

Appellants also maintain that Horry County has discriminated against them by not allowing them to process and sort mixtures of acceptable waste and recyclables at their facility in Marion County. The district court rejected this argument and so do we, because appellants have not been treated differently from other private businesses. Sandlands and EDS could choose to separate recyclables and unacceptable waste from acceptable waste covered by the Flow Control Ordinance, just as other companies have done within Horry County. The extracted recovered materials could then be removed to their facility in Marion County.

To conclude, because no private landfills can be designated by the SWA, all private landfills are treated equally. Furthermore, all private haulers are prohibited from

14

transporting waste from Horry County to landfills not operated by or designated by the SWA. Under the Ordinance, EDS can still haul Horry County waste to the SWA landfills, as do other local hauling companies. Therefore, the Flow Control Ordinance does not discriminate against interstate commerce.

## 2.

Because the Flow Control Ordinance is not discriminatory, we must consider its burdens and benefits under Pike.[6] In Pike, the Supreme Court held that if a "statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142 (internal citations omitted). Even when examining county-level regulations, we focus on burdens to interstate commerce by asking whether there exists a "disparate impact on out-of-state as opposed to in-state businesses." United Haulers, 550 U.S. at 346.

---

[6] Appellants briefly assert that the trier of fact must make its determinations before the application of the Pike test. The posture of United Haulers itself belies this position. Although United Haulers was decided "[a]fter years of discovery" in which the district court judge "could not detect any disparate impact," 550 U.S. at 346 (emphasis omitted), it too was decided at the summary-judgment stage, United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 438 F.3d 150, 155 (2d Cir. 2006).

Here, we need not actually balance the interests laid out in Pike because the Supreme Court has already done so. See United Haulers, 550 U.S. at 346–47. In United Haulers, the Court held that flow control ordinances do address a legitimate local public interest. Id. at 334. It did not "decide whether the ordinances impose[d] any incidental burden on interstate commerce" because it found that "any arguable burden does not exceed the public benefits of the ordinances." Id. at 346. The same analysis is applicable to the Horry County Flow Control Ordinance, because it clearly confers public benefits that outweigh any conceivable burden on interstate commerce.

To begin, the Flow Control Ordinance has only an arguable effect on interstate commerce, even if it does affect intrastate commerce to some degree. Appellants have only shown that the Flow Control Ordinance affects them; they have not shown it has any impact on out-of-state businesses. And contrary to appellants' contention that the Flow Control Ordinance only generates revenue and confers no benefits, the record clearly shows that the Flow Control Ordinance produces the same benefits that the Supreme Court plurality recognized in United Haulers. See id. at 346–47. Moreover, the Flow Control Ordinance's waste-management program is a quintessential exercise of local police power, which courts are loathe to overturn by

16

substituting their judgment for that of local elected officials. See id. at 347.

Like the ordinances in United Haulers, the Horry County Ordinance provides "a convenient and effective way to finance [an] integrated package of waste disposal services." Id. at 346. The Ordinance creates a revenue stream through which the county can support waste management, recycling programs, and its 911 calling system. Although revenue generation alone cannot justify facial discrimination, United Haulers recognized that it can constitute a benefit under the Pike test. Id. The Ordinance also confers other "significant health and environmental benefits." See id. at 347. Examples include public education about recycling, increased opportunities for recycling, and the operation of a green power facility that generates electricity using landfill gas. In fact, the SWA has won statewide awards for its environmentally friendly waste-management programs.

In sum, the Horry County Flow Control Ordinance provides the same types of benefits and imposes the same types of burdens as the ordinances upheld in United Haulers. We therefore conclude that it does not violate the Dormant Commerce Clause. To hold otherwise would ignore precedents ensuring that this court does not become a superlegislature that "rigorously

17

scrutinize[s] economic legislation passed under the auspices of the police power." United Haulers, 550 U.S. at 347.

3.

Appellants argue that summary judgment is not appropriate because there is a factual dispute about whether the Flow Control Ordinance discriminates against interstate commerce. The record, however, does not reveal any disputes of material fact. At summary judgment, "[a]lthough the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

Appellants allege that the SWA discriminates by allowing some haulers to take waste to landfills outside of Horry County, while penalizing EDS for attempting to do the same. The only evidence appellants cite for their argument, however, is that 1,844 tons of waste have left Horry County since 2009. In response, SWA officials testified that all Horry County waste that has not been disposed of at an SWA or another public landfill has either constituted unacceptable waste falling outside of the Ordinance or been removed without the SWA's knowledge or approval. Sandlands and EDS have presented no evidence to contradict this testimony, and the record does not

18

show that EDS has been cited for taking trash to a public landfill.

B.

Finally, appellants challenge the district court's determination that the Flow Control Ordinance does not violate the Equal Protection Clause of the U.S. Constitution. Appellants argue that summary judgment is not appropriate because material issues of fact remain regarding whether they were in fact treated like similarly situated businesses. Sandlands and EDS allege the same factual disputes under the Equal Protection Clause that we rejected under the Dormant Commerce Clause. We reject them here as well.

The Equal Protection Clause prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff makes this initial showing, the court analyzes the disparity under an appropriate level of scrutiny. Id. However, we do not reach that level of analysis because Sandlands and EDS have failed to show that they have

19

been intentionally treated differently from other similarly situated companies. Summary judgment is therefore appropriate on appellants' Equal Protection Clause claim.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.