**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BUILDING GRAPHICS, INC., a North
Carolina corporation,

*Plaintiff-Appellant,*

v.

LENNAR CORP.; DRAFTING &
DESIGN, INC., a North Carolina
corporation; LENNAR CAROLINAS,
LLC,

*Defendants-Appellees.*

No. 11-2200

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, District Judge.
(3:08-cv-00548-RLV-DSC)

Argued: January 29, 2013

Decided: February 26, 2013

Before DAVIS and KEENAN, Circuit Judges, and
John A. GIBNEY, Jr., United States District Judge
for the Eastern District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Keenan and Judge Gibney joined.

## COUNSEL

**ARGUED:** Kathryn Gusmer Cole, MOORE & VAN ALLEN, PLLC, Charlotte, North Carolina, for Appellant. Eric P. Stevens, POYNER SPRUILL LLP, Raleigh, North Carolina; Thomas C. Wright, ROSE WALKER, LLP, Dallas, Texas, for Appellees. **ON BRIEF:** J. Mark Wilson, MOORE & VAN ALLEN PLLC, Charlotte, North Carolina, for Appellant. Douglas M. Martin, POYNER SPRUILL LLP, Charlotte, North Carolina, for Appellee Drafting & Design, Inc.

---

## OPINION

DAVIS, Circuit Judge:

This is an appeal from a summary judgment in favor of defendant in a copyright infringement suit. The infringement claims arise in connection with designs for several Charlotte, North Carolina-area homes. The district court granted summary judgment in favor of defendants-appellees Lennar Corporation and Lennar Carolinas, LLC (collectively, "Lennar"), and Drafting & Design, Inc., concluding that plaintiff-appellant Building Graphics, Inc., lacked sufficient evidence to support a prima facie case of infringement. For the reasons that follow, we affirm.

I.

Building Graphics, Inc., is a Charlotte architecture firm that specializes in designing single family homes. In the 1990s, the firm created and obtained copyrights to the three home plans at the center of this dispute: the Chadwyck, created in 1993; the Ballantrae, created in 1997; and the Springfield, created in 1998 (collectively, the "copyrighted plans"). The copyrighted plans were registered with the United States Copyright Office as both architectural works and technical

drawings. Building Graphics' principal is Frank Snodgrass, and its clients include individuals and home builders who purchase its plans to construct new homes.

The copyrighted plans were purchased by Charlotte-area home builders: the Chadwyck by UDC Homes, Inc.; the Ballantrae by Hampshire Homes, Inc.; and the Springfield by Evans Ingraham Builders. Snodgrass testified on deposition that at least one version of both the Ballantrae and Springfield homes was built in Charlotte, but that he was not sure whether any Chadwyck homes had been built. The Ballantrae and Springfield plans have been available on the Internet since their creation, on the website of the Building Graphics' affiliate Living Concepts, Inc., where both are available to the public for purchase as "stock" plans. *See www.lchouseplans.com.* UDC Homes, which purchased the Chadwyck plan, made cut sheets, which provide design specifications, and sales brochures related to the house available to the public.

Lennar builds homes in eighteen states. Before Lennar enters a market, it conducts a "due diligence" analysis on other homes being offered in the market. Such a process involves looking at the homes offered by competitors in the market, including home plans, floor plans, prices, and features of competitors' homes. Lennar stated that the review is limited to homes currently being built and sold in the market, and does not include completed neighborhoods. Specifically, Lennar's Jerry Whelan testified on deposition:

> Q: As part of the due diligence process in looking for or in deciding what homes to build, does Lennar ever look at house plans from local architects?
>
> A: That's typically not part of the process, no.
>
> Q: As far as you know, it is — the due diligence process is limited to looking at competitive builder offerings?

A: Yeah, new home, competitive new home builder offerings.

Q: You don't look to see what a competitor was successful with in a neighborhood that might be completed?

A: Typically that's not the direction of due diligence, no.

J.A. 619.

In 2001, Lennar was making plans to enter the Charlotte market. Lennar hired the architecture firm Drafting & Design to create home plans for it to offer in Charlotte; Drafting & Design began work on these plans in or around May 2001. Drafting & Design did not draw up these new home plans from scratch, however. Lennar delivered to Drafting & Design hard copy blueprints of a home plan called the "Fairfax" and instructed Drafting & Design to base its new home plans on the Fairfax. Lennar asserted it got the Fairfax plan from U.S. Homes, which Lennar acquired in 2000. Specifically, Lennar averred that one of its employees, John Gardner, delivered the Fairfax plan to Drafting & Design. Gardner stated that his boss at Lennar instructed him to contact Lennar's Maryland/D.C. Division to obtain copies of the Fairfax to give to Drafting & Design.

But Gardner was not an employee of Lennar in May 2001, when Drafting & Design began work on the challenged plans. Gardner became an employee of Lennar only in December 2001, when Lennar acquired Don Galloway Homes, a Charlotte builder by whom Gardner was then employed. Gardner, as an employee of Don Galloway Homes in May 2001, would not have had access to the Fairfax plan until Lennar's acquisition of Don Galloway in December 2001. Lennar has failed to provide a satisfactory explanation for exactly how the challenged plans at issue in this appeal came to be created. As the

district court observed, "Defendants have done little to show that the Fairfax was itself created independently of Plaintiff's protected designs." *Building Graphics, Inc., v. Lennar Corp.*, 866 F. Supp. 2d 530, 535 (W.D.N.C. 2011).

In any event, Drafting & Design ultimately produced a set of architectural plans based on the Fairfax, which Lennar named the Summerlin, Hampton, Hudson, Abbey, and Bluffton homes (collectively, the "challenged plans").

Building Graphics alleges the challenged plans infringed on its copyrights in the Chadwyck, Ballantrae, and Springfield designs.[1] Building Graphics argues that the first floor plans of the challenged plans are substantially similar to the first floor plan of its Chadwyck home. Certain similarities between the floor plans are apparent. Each has a staircase that makes a 90-degree turn. Each has a den to the right of the foyer. Each foyer has an angled sightline to the family room. On the left side of each plan is a "stacked" living room and dining room, with the living room in the front. Each has a garage on the right side of the floor, with a laundry room behind the garage. But there are differences, as well, as summarized by the district court:

> These differences include variation in the footprint (or outline) and square footage; room dimensions (for instance, none of the Summerlin's rooms were the same size as those detailed in the Chadwyck plan); the arrangement of windows in the dining rooms, living rooms, and family rooms; the orientation of the rear wall between the kitchen and breakfast room; the placement of an island in the kitchen; the positioning of entries to the den; the orientation of the first-floor powder room; the placement of the laundry room (with respect to orientation, shape, and

[1]Floor plans and renderings of the copyrighted and challenged plans are included in the appendix to this opinion.

entry); the size of the garage and its location of entry; the placement of the pantry; the placement of a fireplace; and the size of the foyer and access to the hallway.

*Building Graphics*, 866 F. Supp. 2d at 544.

Building Graphics next alleges that the front elevation of Lennar's Summerlin home is substantially similar to the front elevation of its Ballantrae home. Each has a front door set behind two columns with an arch at the top. Each has three gables in similar places: one atop the front entrance, one atop the center of the house, and one over the garage. Each has a large window with a rounded top above the front door, with similar window placement on each side of the front door. Each has a side-load garage. The differences between the plans were summarized by the district court:

> With respect to the Plaintiff's Ballantrae design and Lennar's Summerlin design, the roof lines are different—the Summerlin has a hip roof where the Ballantrae has a gable roof; the Summerlin has three windows across the garage with shutters, whereas the Ballantrae has only two windows crowned by arches; the front side of the Summerlin is constructed with stone and has a pediment over the gable, whereas the Ballantrae has brick construction; and the details within the arched gables on each house are different.

*Building Graphics*, 866 F. Supp. 2d at 545.

Finally, Building Graphics alleges that the front elevations of Lennar's Hampton and Hudson homes are substantially similar to the front elevation of its Springfield home. The similarities include the three gables on each, placed over the center of the house, the center-left, and the garage; the four levels of the facade, with the garage protruding the farthest, the

center-left of the house set back from that, the front door set back from the center-left, and the right side set back from the front door. Each has a similarly shaped window over the front door, as well as the same number and placement of windows on the right side of the house. The differences were noted by the district court:

> With respect to the Springfield and Lennar's models, these differences include the roof lines; the Springfield's brick construction on the sides and rear (in contrast with the Hampton's lack thereof); the design and number of windows; the gables (and placement of "eyebrows"); and the trimming of the front door.

*Building Graphics*, 866 F. Supp. 2d at 545.

## II.

Building Graphics filed this copyright infringement suit against Lennar and Drafting & Design in the Western District of North Carolina on December 2, 2008, seeking damages and injunctive relief. Defendants filed motions for summary judgment at the conclusion of discovery. The district court granted the motions on September 30, 2011, concluding there was insufficient evidence on critical elements of Building Graphics' infringement claims. *Building Graphics*, 866 F. Supp. 2d at 533.[2]

A copyright infringement claim, as the district court correctly noted, requires a showing that the defendant copied the plaintiff's work and that the defendant's work is "substantially similar" to the protectable elements of the plaintiff's work. *Building Graphics*, 866 F. Supp. 2d at 539. Because

---

[2]The court denied in part Lennar's motion as it related to the validity of Building Graphics' copyrights. *Id.* at 538-39. The court found Building Graphics owned valid copyrights in the plans, as shown by the certificates of registration issued by the U.S. Copyright Office. *Id.* at 538.

direct evidence of copying is hard to come by, the court observed that a plaintiff may establish an inference of copying by showing access to the allegedly infringed work as well as substantial similarity between the works at issue. *Id.* To prove access, the plaintiff must show that the defendant had an opportunity to view or copy the work. *Id.* The "mere possibility" of such an opportunity is not enough. *Id.* It must be "reasonably possible" that the defendant had access to the copyrighted work. *Id.* The court held that Building Graphics had established only the mere possibility that Lennar had access to its copyrighted home plans, not the reasonable possibility of access. *Id.* at 540-41. The court noted that Lennar's due diligence process made it only merely possible that Lennar viewed Building Graphics' homes. *Id.* at 541. The fact that the plans were available online also was not enough to prove access. *Id.* Furthermore, the fact that Chadwyck cut sheets or sales handouts were available to the public did not create a reasonable possibility of access. *Id.* at 542.

The court further held there was no substantial similarity between the Building Graphics and Lennar homes. *Building Graphics*, 866 F. Supp. 2d at 543-45. Relying on the Eleventh Circuit opinion in *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008), the court reasoned that Building Graphics' homes should be considered "compilations" and thus subject to "thin" copyright protection. *Building Graphics*, 866 F. Supp. 2d at 543-44. Given such thin protection, the court stated there must be a "supersubstantial" similarity between the works to prove infringement. *Id.* at 544. Applying this standard, the court held that Building Graphics' copyrighted home plans were "sufficiently dissimilar from Defendant's plans to preclude a finding of infringement." *Id.* Further, "a court can find designs to be visually similar with the same general layout and nonetheless find the dissimilarities significant enough to preclude a finding of infringement." *Id.* The court concluded that "no reasonable, properly instructed jury could find the works substantially

similar," and granted defendants' motions for summary judgment. *Id.* at 545.

Building Graphics filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## III.

This Court reviews de novo a district court's award of summary judgment, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 445 (4th Cir. 2010). Summary judgment is only appropriate if there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a).

## IV.

Our resolution of this appeal requires an application of copyright law to architectural works. "To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). Here, there is no dispute that Building Graphics holds valid copyrights in the plans at issue. The case thus turns on whether Lennar copied Building Graphics' house plans. Copying can be proven through direct or circumstantial evidence. *Id.* When direct evidence is lacking, a plaintiff "may create a presumption of copying by indirect evidence, establishing that the defendant had access to the copyrighted work and that the defendant's work is 'substantially similar' to the protected material." *Id.* (citing *Towler v. Sayles*, 76 F.3d 579, 581-82 (4th Cir. 1996)).

To rely successfully on circumstantial evidence of copying, Building Graphics must first show that it is reasonably possible that Lennar had access to the Building Graphics plans. "Access may be shown by demonstrating that the infringer

had an opportunity to view or to copy the protected material. But this showing must establish more than a 'mere possibility that such an opportunity could have arisen'; it must be 'reasonably possible that the paths of the infringer and the infringed work crossed.'" *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000) (quoting *Towler*, 76 F.3d at 582). *See also Armour v. Knowles*, 512 F.3d 147, 152-53 (5th Cir. 2007) ("To establish access, a plaintiff must prove that the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work before creating the infringing work. Indeed, a bare possibility will not suffice; neither will a finding of access based on speculation or conjecture." (internal citations, quotation marks, and insertions omitted)); *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009) ("To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work.").

In determining whether Building Graphics has shown that Lennar had a reasonable possibility of access to the copyrighted plans, we are guided by our decisions in *Towler*, 76 F.3d 579, and *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350 (4th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001). In *Towler*, regarding alleged copyright infringement of a screenplay, the plaintiff attempted to send a copy of her screenplay, "Crossed Wires," to director and screenwriter John Sayles. 76 F.3d at 582. But Towler instead sent the screenplay to a company that had no association with Sayles, and introduced no evidence from which a jury could draw a reasonable inference that Sayles ever received the screenplay. *Id.* at 582-83. Further, Sayles testified and introduced evidence showing that he began work on the allegedly infringing screenplay months before Towler sent the screenplay to the wrong company. *Id.* at 582. We held there was not a reasonable possibility that Sayles had access to the screenplay. *Id.* at 583.

Our *Bouchat* decision is a good example of a case where reasonable access was shown. There, in 1996, Bouchat, a Bal-

timore artist, created a logo when he learned that Baltimore's new football team (Cleveland's old football team) would be called the Ravens. Bouchat showed his drawings to John Moag, the chairman of the Maryland Stadium Authority, which was involved in bringing the Ravens to Baltimore. 241 F.3d at 353. Moag said he would give the drawings to the Ravens for consideration. *Id.* At that time, Ravens owner David Modell occupied the same office suite as Moag. *Id.* Bouchat faxed his drawings to Moag on April 1 or 2, 1996, and received a fax confirmation. *Id.* On April 2, Modell met with the NFL to discuss a new Ravens logo, which was unveiled in June and strongly resembled Bouchat's design. *Id.* We held that a jury was entitled to credit Bouchat's testimony and evidence, and that the chain of transmittals from Bouchat to Modell was "far more than hypothetical," and that Modell thus had "access" to the drawings. *Id.* at 354.

Here, Building Graphics has not shown a chain of events or wide dissemination sufficient to show a reasonable possibility that Lennar had access to Building Graphics' plans. While Lennar has not adequately explained how its architecture firm, Drafting & Design, received a copy of the Fairfax design in May 2001 on which it based the now-challenged plans, that failing on the part of Lennar does not absolve Building Graphics of the burden of showing a reasonable possibility of access. Building Graphics' principal argument is that it has shown a reasonable possibility of access through Lennar's due diligence process, emphasizing that Lennar's representative, Whelan, stated that he was not aware if Lennar studied Building Graphics designs as part of its due diligence process. Building Graphics takes this to mean that it is *possible* Lennar saw the copyrighted plans. The district court, however, concluded evidence of this due diligence only established the "mere possibility" of access. *Building Graphics*, 866 F. Supp. 2d at 541. We agree.

It is not genuinely disputed that Lennar habitually confined its due diligence to new homes that were currently on offer

and being built in the market — not homes that had been built years earlier. And (viewed in the light most favorable to Building Graphics) the record indicates that only a small number of homes were ever built from the copyrighted plans — one Ballantrae home, one Springfield home, and no Chadwyck homes — further diminishing the possibility of access.

Building Graphics also argues that because two of its plans — the Ballantrae and Springfield — were available on the Internet, a reasonable possibility of access can be inferred. Whelan stated that as part of due diligence, Lennar looks at house plans online. But Whelan's testimony made clear the online review was limited to what its competitors are currently offering. Because the copyrighted plans were no longer being built in Charlotte, it is at best a mere possibility that they would be considered as part of the due diligence process. Tellingly, no showing has been made that the copyrighted plans were prominently featured on Building Graphics' website in such a way that Lennar would easily find them or stumble across them. Nor has a showing been made that there is a reasonable possibility that the Chadwyck cut sheets were obtained by Lennar. The mere existence of the cut sheets is not enough to support an affirmative inference that they fell into Lennar's hands.

Whether viewed individually or in the aggregate, the above facts and circumstances amount to inferences built upon inferences; they do not give rise to more than a mere possibility of access. We hold, therefore, that Building Graphics has not marshaled sufficient evidence to support a finding that there exists a reasonable possibility that Lennar had access to its copyrighted plans. Accordingly, the district court correctly concluded that as a matter of law, Building Graphics lacks the evidence necessary to sustain its claims of copyright infringement.[3]

---

[3]Because we find that Building Graphics has not shown a reasonable possibility that Lennar had access to its copyrighted plans, we need not

## V.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

and do not reach the second step of the copyright infringement inquiry: determining whether the challenged and copyrighted plans are substantially similar. We note, however, that in reaching its determination adverse to Building Graphics on this issue, the district court did not have the benefit of our recent unpublished opinion in *Charles W. Ross Builder, Inc. v. Olsen Fine Home Building, LLC*, No. 11-2206, 2012 WL 5447871 (4th Cir. Nov. 8, 2012), in which we held that the two-part test for determining substantial similarity — laid out in *Universal Furniture International, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417 (4th Cir. 2010), and earlier precedent, in which the plaintiff must show that the works are both "extrinsically" and "intrinsically" similar — is applicable to copyright infringement claims involving architectural works. Were we to reach the issue, we would find the analysis in *Universal Furniture International, Inc.*, applicable here.

**APPENDIX**

Building Graphics' Chadwyck floor plan:



Lennar's Summerlin floor plan:



Building Graphics' Ballantrae elevation:



Lennar's Summerlin elevation:



Building Graphics' Springfield elevation:



Lennar's Hampton elevation:

