**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-2030**

_____

HUMPHREYS & PARTNERS ARCHITECTS, L.P.,

Plaintiff – Appellant,

v.

LESSARD DESIGN, INCORPORATED; LESSARD GROUP INCORPORATED;
CHRISTIAN J. LESSARD; CLARK BUILDERS GROUP, LLC; PDT
BUILDERS, LLC; THE PENROSE GROUP; SIXTH PENROSE INVESTING
COMPANY LLC; NORTHWESTERN INVESTMENT MANAGEMENT COMPANY,
LLC; NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

Defendants – Appellees,

and

PENROSE PARTNERS; PARK CREST SPE PHASE I, LLC;
PENROSE/DONOHOE TYSONS, LLC,

Defendants.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  T. S. Ellis, III, Senior
District Judge. (1:13-cv-00433-TSE-TCB)

_____

Argued:  May 12, 2015                    Decided:  June 23, 2015

_____

Before SHEDD, DUNCAN, and HARRIS, Circuit Judges.

_____

Affirmed by published opinion.  Judge Duncan wrote the opinion,
in which Judge Shedd and Judge Harris joined.

_____

**ARGUED:** Patrick Andrew Zummo, LAW OFFICES OF PATRICK ZUMMO, Houston, Texas, for Appellant. Patrick Joseph Coyne, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, D.C.; Antigone Gabriella Peyton, CLOUDIGY LAW PLLC, McLean, Virginia, for Appellees. **ON BRIEF:** Walter D. Kelley, Jr., HAUSFELD, LLP, Washington, D.C.; Jennifer L. Swize, JONES DAY, Washington, D.C., for Appellant. Kandis M. Koustenis, CLOUDIGY LAW PLLC, McLean, Virginia, for Appellees The Penrose Group, PDT Builders, LLC, Sixth Penrose Investing Company LLC, and Clark Builders Group, LLC; Christopher P. Foley, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, D.C., for Appellees Lessard Design, Incorporated, Lessard Group Incorporated, and Christian J. Lessard; Christopher P. Mead, LONDON & MEAD, LLP, Washington, D.C., for Appellees Northwestern Investment Management Company, LLC and Northwestern Mutual Life Insurance Company.

DUNCAN, Circuit Judge:

In this architectural copyright infringement action, Plaintiff-Appellant Humphreys & Partners Architects, L.P. ("HPA") appeals the district court's entry of summary judgment in favor of Defendants-Appellees Lessard Design, Inc., Lessard Group, Inc., and Christian J. Lessard (collectively, "Lessard"); Clark Builders Group, LLC ("Clark"); PDT Builders, LLC, The Penrose Group, and Sixth Penrose Investing Co., LLC (collectively, "Penrose"); and Northwestern Investment Management Co., LLC, and Northwestern Mutual Life Insurance Co. (collectively, "Northwestern"). HPA claims that the design, development, ownership, and construction of Two Park Crest, an apartment building in McLean, Virginia, infringed HPA's architectural copyright embodied in Grant Park, a condominium building in Minneapolis, Minnesota.[1] The district court awarded summary judgment to Appellees, primarily because no reasonable jury could find that the Grant Park and Two Park Crest designs are substantially similar. For the following reasons, we affirm.

---

[1] The Appendix to this opinion includes a comparison prepared by HPA's founder and CEO of the two designs' floorplans and exteriors. See infra Appendix; see also J.A. 5220, 5222.

3

I.

A.

HPA is an architecture firm based in Dallas, Texas, that designs multi-family residential buildings. In 2000 and 2001, HPA designed a high-rise residential tower known as Grant Park. In 2003, HPA registered the Grant Park design as an architectural work with the United States Copyright Office and received a certificate of copyright registration. The Grant Park building was constructed in Minneapolis, Minnesota, in 2004.

Grant Park is a 27-story condominium building with 11 units per floor. It has two separate elevator cores, such that each floor has two elevator lobbies. The units on a typical floor open directly into these lobbies, five units into one and six into the other. The lobbies also each provide access to a stairwell and to either a trash chute or a mechanical/electrical room. Residents can travel between the lobbies through an unfinished service corridor, which allows all residents to access both utility rooms and both stairwells. This dual-core layout is desirable because it eliminates the need for a finished central hallway and fosters a sense of community among the units sharing a lobby.

In 2008, Penrose began developing a high-rise apartment building called Two Park Crest for construction in McLean,

4

Virginia.  In 2010, it solicited design proposals from three architecture firms, including HPA and Lessard, a firm based in Vienna, Virginia.  HPA submitted illustrations of its Grant Park design in September 2010 and met with Penrose in October 2010.

On November 3, 2010, Penrose informed Lessard that it wanted the Two Park Crest design to feature dual elevator cores connected by a service corridor, and emailed Lessard the Grant Park floorplan to illustrate the concept.  Later that month, on November 15, Lessard emailed Penrose a preliminary sketch of a design with two elevator cores; Penrose responded that the design was "looking good."  J.A. 9033.  Lessard ultimately submitted a design for a 19-story building with 17 apartments per floor.  The design incorporated three elevator cores: two passenger elevator cores connected by an unfinished hallway, and a service elevator core accessible from that hallway.  Of the 17 apartments per floor, 8 would open directly into one passenger elevator lobby and 9 would open directly into the other.

On November 17, 2010, Penrose told HPA that it had hired Lessard to design the Two Park Crest project.  Penrose subsequently sold the project to Northwestern.  In November 2011, Northwestern hired Clark to construct Two Park Crest.  Clark began constructing the building in January 2012.

5

B.

In April 2013, HPA filed this action against Appellees [2] under 17 U.S.C. § 101 et seq., alleging one count of copyright infringement against each Appellee. Following discovery, the parties cross-moved for summary judgment. Appellees argued that they were not liable to HPA because, among other reasons, they did not copy the Grant Park design and the two designs are not substantially similar. Appellees supported their motions with expert reports filed by three architects--Stephen Gresham, Robert Greenstreet, and Douglas Carter--who concluded in their reports that the two designs are not substantially similar.

HPA argued in its motion and responses to Appellees' motions that Lessard copied the Grant Park design after receiving that design from Penrose. It claimed that the speed with which Lessard created the Two Park Crest design is direct evidence of copying, and that the similarities between the two designs is circumstantial evidence of copying. HPA supported its claim that the two designs are substantially similar with a declaration from architect and HPA expert Daniel Figert, who identified nine characteristics shared by both designs--for example, both designs are for multi-family buildings that are

---

[2] HPA also brought a claim against Penrose Partners, Park Crest SPE Phase I, LLC, and Penrose/Donohoe Tysons, LLC, none of which is a party to this appeal.

6

approximately twenty stories tall, that have two elevator lobbies connected by a service corridor, and that provide direct access to units from the elevator lobbies.[3] HPA argued that the presence and arrangement of these nine features in Two Park Crest infringed its copyright in the Grant Park design.

HPA also moved to strike Gresham's, Greenstreet's, and Carter's expert reports on the ground that those reports were inadmissible hearsay. In response, Appellees provided declarations from the experts verifying the contents of their reports and stating that they would testify at trial to the substance thereof. The district court then denied HPA's motions to strike, reasoning that the declarations, although belated, cured HPA's objection.

On September 2, 2014, the district court granted Appellees' motions for summary judgment. The court determined that summary judgment was appropriate because, among other reasons, (1) there was no direct evidence of copying, and (2) no reasonable jury

---

[3] Figert also stated that both buildings have a "barbell"-shaped footprint, have "similar top story and fenestration [(i.e., window)] elements" that are constructed of "the same materials," and have a roof with a "cantilevered overhang" (i.e, a roof extending beyond the exterior wall that is supported by a beam anchored only inside the exterior wall). J.A. 5559–60 (Figert Declaration). And, with respect to the typical floorplans in each design, Figert stated that each building has "mechanical / electrical rooms located at one end of the fire corridor and the trash chutes located at the opposite end," and that the corner units in each design have "diagonal access corridors." Id. at 5559.

7

could find that the Grant Park and Two Park Crest designs are extrinsically (i.e., objectively) similar.

The court held that the two designs are not extrinsically similar for two independently sufficient reasons. First, neither the nine features that Figert identified nor their arrangement in Grant Park is eligible for copyright protection. And second, those features are presented and arranged differently in the Two Park Crest design. With respect to the arrangement of the nine features in the two designs, the court noted that Appellees' experts had provided detailed explanations as to how the two designs differ with respect to their size, footprints, floorplans, and exterior appearances. HPA's expert, in contrast, "offer[ed] no evidence as to what makes the two arrangements extrinsically similar." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 43 F. Supp. 3d 644, 677 (E.D. Va. 2014). The court concluded that Appellees were "entitled to summary judgment . . . based on the results of the extrinsic similarity analysis." Id. HPA timely appealed.

## II.

Before turning to HPA's arguments on appeal, we set forth the law governing architectural copyright infringement claims. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from

8

which they can be perceived, reproduced, or otherwise communicated . . . ." 17 U.S.C. § 102(a). In 1990, Congress expanded the scope of "works of authorship" to include "architectural works," id. § 102(a)(8), by enacting the Architectural Works Copyright Protection Act (the "AWCPA"), Pub. L. No. 101–650, §§ 701–706, 104 Stat. 5089 (1990) (codified in various sections of 17 U.S.C.). The AWCPA defines an architectural work as "the design of a building as embodied in any tangible medium of expression." 17 U.S.C. § 101. "The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." Id. The AWCPA's legislative history explains that the arrangement and composition of spaces and elements is protectable because "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole." H.R. Rep. No. 101–735, at 18 (1990), reprinted in 1990 U.S.C.C.A.N. 6935, 6949.

"To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright." Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001). "Copying can be proven through direct or

9

circumstantial evidence." <u>Bldg. Graphics, Inc. v. Lennar Corp.</u>, 708 F.3d 573, 578 (4th Cir. 2013).

"Direct evidence of copying . . . includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." <u>Rottlund Co. v. Pinnacle Corp.</u>, 452 F.3d 726, 732 (8th Cir. 2006). In <u>M. Kramer Manufacturing Co. v. Andrews</u>, 783 F.2d 421 (4th Cir. 1986), for example, we found direct evidence of copying where "[t]he computer programs in the record [were] virtually identical" and the defendants' program, like plaintiff's, included "a hidden legend that would appear only when the [program's] buttons were pressed in an abnormal sequence," <u>id.</u> at 446. Similarly, our sister circuits have found direct evidence of copying where a defendant "gave . . . explicit instruction that [a] work be copied," <u>Rogers v. Koons</u>, 960 F.2d 301, 307 (2d Cir. 1992), and where the defendant admitted to copying the plaintiff's work, <u>see, e.g.</u>, <u>Enter. Mgmt. Ltd. v. Warrick</u>, 717 F.3d 1112, 1120 (10th Cir. 2013); <u>Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory</u>, 689 F.3d 29, 49 (1st Cir. 2012).

"Where direct evidence of copying is lacking, [the] plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the

10

author's original work." Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 353-54 (4th Cir. 2001). To show substantial similarity, the plaintiff must establish that the two works are both "extrinsically" and "intrinsically" similar. Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 435 (4th Cir. 2010). "The extrinsic inquiry is an objective one" that "looks to 'external criteria'" of substantial similarity between the alleged copy and the protected elements of the copyrighted work. Id. at 435–36 (quoting Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994)). "The intrinsic inquiry, in contrast, implicates the perspective of the [works'] intended observer . . . [and] looks to the 'total concept and feel of the works . . . .'" Id. at 436 (quoting Lyons P'ship, 243 F.3d at 801).

While we have applied this two-part substantial similarity test in a variety of copyright contexts, we have not expressly held in a published opinion that this test governs claims of architectural copyright infringement. The parties both argue, and the district court determined, that the extrinsic/intrinsic test governs. We agree, and therefore hold that "the two-part test for determining substantial similarity . . . is applicable to a copyright infringement claim involving architectural works." Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC, 496 F. App'x 314, 320 (4th Cir. 2012); see also Bldg.

11

Graphics, 708 F.3d at 580 n.3 (stating in dicta that the court would apply the extrinsic/intrinsic test to a claim of architectural copyright infringement).

### III.

We turn now to HPA's arguments on appeal. HPA claims that the district court erred in three respects: by considering Appellees' expert reports when resolving the motions for summary judgment; by failing to credit HPA's direct and circumstantial evidence of copying; and by making various errors of copyright law. We consider each argument in turn.

### A.

We begin with HPA's argument that the district court erred by considering Appellees' expert reports, a claim we review for abuse of discretion. See Nader v. Blair, 549 F.3d 953, 963 (4th Cir. 2008) (reviewing admissibility of affidavits at summary judgment stage for abuse of discretion); cf. EEOC v. Freeman, 778 F.3d 463, 466 (4th Cir. 2015) ("We review a district court's decision to admit or to exclude expert evidence for an abuse of discretion.").

HPA maintains that, because these reports were "inadmissible hearsay," they were "not evidence upon which the court could grant summary judgment." Appellant's Br. at 25. Appellees respond that the district court acted within its

discretion when considering the expert reports because those "reports were both sworn to in declarations filed in response to HPA's objection and the content of the reports would be admissible through the expert's testimony at trial." Appellees' Br. at 28. We agree with Appellees that the district court did not err by considering the reports.

"The court and the parties have great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721 (3d ed. 1998). The court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the "the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form." 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015). If the nonmovant objects to the court's consideration of "material cited to support or dispute a fact," Fed. R. Civ. P. 56(c)(2), the movant has the burden "to show that the material is admissible as presented or to explain the admissible form that is anticipated," Fed. R. Civ. P. 56 advisory committee's note.

Here, the admissibility of the reports themselves is immaterial because Appellees "explain[ed] the admissible form that is anticipated." Id. Appellees submitted declarations

13

made "under penalty of perjury" from the experts attesting that they "would testify to the matters set forth in [their respective] report[s]." J.A. 6367 (Greenstreet), 6392–93 (Carter); accord J.A. 6426 (Gresham). And "[s]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 826 (8th Cir. 2009) (quoting Maytag Corp. v. Electrolux Home Prods., Inc., 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006)). HPA does not claim that the experts' declarations are deficient or that the experts' testimony would be inadmissible at trial. We therefore find no error in the district court's consideration of the experts' reports.[4]

### B.

We turn now to HPA's argument that the district court failed to credit HPA's direct and circumstantial evidence of copying when granting summary judgment to Appellees. As the

---

[4] Our holding today does not establish any requirement for the consideration of expert reports at summary judgment. We hold only that the district court acted within its discretion by considering Appellees' reports; we express no opinion as to whether the experts' declarations were necessary. Cf. Deakins v. Pack, 957 F. Supp. 2d 703, 752 (S.D.W. Va. 2013) ("The 2010 amendments to Rule 56(c)(2) 'eliminated the unequivocal requirement that documents submitted in support of a summary judgement motion must be authenticated.'" (quoting Akers v. Beal Bank, 845 F. Supp. 2d 238, 243 (D.D.C. 2012))).

14

district court noted, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the nonmoving party." Boyer-Liberto v. Fontainebleau Corp., No. 13-1473, 2015 WL 2116849, at *8 (4th Cir. May 7, 2015) (en banc).

### 1.

HPA first argues that the district court "ignored HPA's evidence" when it "stated that there was no direct evidence of copying." Appellant's Br. at 52. HPA submits that "the development of Lessard's sketches establishes direct evidence of copying," id. at 53, particularly when viewed in concert with Figert's deposition testimony. Figert stated in relevant part: "It appears that rather than going through the normal iterative design process, that Lessard had a preconceived solution to the design." Id. (quoting J.A. 5195).

This evidence is not direct evidence of copying. That Lessard may have created its design with more speed and less revision than is typical in the industry is consistent with HPA's theory that Lessard copied its design, but it does not

itself establish copying.[5]  And Figert did not claim to have personal knowledge that Lessard copied the Grant Park design. In fact, Figert made clear in his deposition that he was not prepared to state that Lessard copied the design.  Asked whether it was his "opinion that Lessard copied the Grant Park design," Figert responded, "I was not asked to give an opinion about whether or not there was a copy made. . . . I'll pass on giving a conclusion as to whether or not I think they copied it or not."  J.A. 1532.  Because HPA presented no direct evidence of copying, the district court did not err by stating that "direct evidence of copying does not exist" here.  Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 43 F. Supp. 3d 644, 659 (E.D. Va. 2014).

2.

HPA next argues that the district court resolved disputed issues of fact in Appellees' favor and failed to credit HPA's evidence when considering whether the two designs are

---

[5]  HPA states that the district court in Brocade Communications Systems, Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192 (N.D. Cal. 2012), considered "almost identical facts" to be "direct evidence of copying," Appellant's Br. at 53.  But the Brocade court found "the unusually fast pace of development of [computer] code" to be "circumstantial evidence" supporting an expert's conclusion about copying.  Brocade Commc'ns Sys., 873 F. Supp. 2d at 1219–20 (emphasis added).

16

extrinsically similar. [6] Specifically, HPA claims that the district court failed to credit its "evidence showing that the overall form and composition of the works was similar." Appellant's Br. at 27. This argument presents a closer question then does HPA's direct-evidence claim. We address it by outlining the parties' respective burdens at summary judgment, and then considering whether Appellees and HPA met those burdens.

The party moving for summary judgment "discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case." Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002). If the movant discharges this burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (quoting White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir. 1987)). To create a genuine issue for trial, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). In other words, a factual

---

[6] We assume for the purposes of this argument that HPA has met its burden of showing that it owns a valid copyright in the Grant Park design, and that Appellees had access to that design.

17

dispute is genuine only where "the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find" in its favor. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 175 (4th Cir. 1988).

Here, Appellees carried their initial burden of "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support [HPA's] case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). They explained in their motions that no evidence suggests that Two Park Crest and Grant Park have a substantially similar overall form, or that the two designs arrange spaces and elements in a substantially similar manner. And Appellees submitted expert reports explaining why the two designs are dissimilar. Cf. Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 435 (4th Cir. 2010) ("The extrinsic inquiry is an objective one on which expert testimony may be relevant."). For example, Gresham explained in his report that, while both designs offer direct access to units from elevator lobbies, the "relation of the elevators to the apartment doors" is different in the two designs. J.A. 2326. "At Grant Park," Gresham wrote, "the elevators open into a discernible vestibule," such that a person standing in the lobby "can view six of the individual resident doors (out of eleven, total, per floor[])." Id. "At Two Park Crest, however, the elevators open directly into a cross

18

corridor," and "[u]nit entries are tucked away in the legs of an H-shaped resident corridor[.]"  Id.  In the Two Park Crest design, "[o]nly two of seventeen resident doors are visible form the elevator lobby."[7]  Id.

The burden then shifted to HPA to document a substantial similarity between the protected elements of its design--i.e., Grant Park's overall form and arrangement of the nine individual features--and the Two Park Crest design.  HPA claims on appeal that it carried this burden with the following evidence.

First, HPA relies on two declarations submitted by Mark E. Humphreys, HPA's founder and CEO.  The only statements in these declarations relevant to substantial similarity are Humphreys's assertions that "[t]he Court can see that the two floor plans are very similar," and that "the Court can see that [the two buildings] have a very similar appearance."  J.A. 5216.  These statements are insufficient to create a genuine dispute of material fact because they are conclusory.  See Dash, 731 F.3d at 311.  Humphreys identifies no specific, objective similarity

---

[7] Appellees also presented evidence that, as compared to Grant Park, Two Park Crest is eight stories shorter; has six more units per floor; has one more elevator core, for service; has a less rectangular footprint; has mechanical/electrical rooms and trash chutes on the back (rather than front) side of the building; has exit stairwells located opposite the elevator lobbies and encased in separate enclosures; has an exterior with wider and more widely spaced vertical indentations; has a façade that is majority glass; and has fewer window elements and walkable balconies.

between the two designs to support his conclusion that the buildings' floorplans and appearances are similar.

Second, HPA identifies three declarations--from Robert Lux and David A. Hunt, both of whom worked with HPA on the Grant Park project, and Walter Hughes, HPA's Director of Design--describing the creation, originality, and benefits of the Grant Park design. These declarations do not create a genuine dispute for trial because none contains an assertion about the similarity between the Grant Park and Two Park Crest designs.

Finally, HPA relies on Figert's declaration and deposition testimony. Figert stated in his declaration that "[t]he two designs have an extrinsic similarity in that the ideas and expression of the ideas used in the projects have substantial similarities[,] . . . includ[ing] such things as building floor plan layout, exit circulation, building size, and composition of the major elements that make up the exterior expression of the designs." J.A. 5558. He also listed nine features shared by both designs--for example, the stairwells in both designs are located adjacent to elevator lobbies--and stated that these characteristics are "examples of the arrangement and composition of spaces and elements that represent substantially similar features of Humphreys' Grant Park design." J.A. 5560. And Figert stated in his deposition that the "the overall expression

of the idea of those [nine] elements is very similar in the two projects." J.A. 5197.

Figert's declaration and deposition testimony are insufficient to show that the designs are extrinsically similar. Like Humphreys, Figert offered no specific similarity between the designs' overall form or arrangement of individual elements. He identified nine shared features and stated that these characteristics show that the two designs arrange and compose both spaces and elements in a substantially similar manner. But the mere presence of these nine features in both buildings does not create an issue for trial because, as HPA's counsel confirmed at oral argument, HPA does not claim "any protectable interest in any individual component" of the Grant Park design.[8] Oral Arg. 7:56–8:16; see also Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 143 (4th Cir. 2000) ("To prove copyright infringement, the plaintiff must establish that it owned copyrighted material and that the infringer copied protected elements of it."). And Figert did not explain how specifically the two designs are similar in their floorplans, exits, sizes, or arrangement of individual elements. Figert's

---

[8] We do not imply that the outcome of this appeal would be different if HPA had pressed this claim. To the contrary, we agree with the district court that the nine features, when viewed in isolation, are not extrinsically similar in the two designs. See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 43 F. Supp. 3d 644, 669-75 (E.D. Va. 2014).

conclusory assertions are, as a matter of law, insufficient to show that any aspect of Two Park Crest is substantially similar to a protected element of the Grant Park design. See Dash, 731 F.3d at 311.

At bottom, HPA failed to carry its burden of identifying a specific similarity between the Two Park Crest design and the protected elements of its Grant Park design. The evidence, viewed in the light most favorable to HPA, shows that the Two Park Crest and Grant Park designs incorporate nine of the same concepts. But it does not establish that the two designs have a similar overall form, or that the designs arrange or compose elements and spaces in a similar manner. Accordingly, because HPA failed to present nonconclusory evidence that the designs are extrinsically similar, we reject HPA's claim that the district court failed to credit its extrinsic-similarity evidence.

C.

We conclude by addressing HPA's claim that the district court misapplied relevant copyright law in three respects.

First, HPA argues that the district court erroneously declined to consider whether the Two Park Crest design arranges unprotected elements in a substantially similar manner to the arrangement of those elements in the Grant Park design. This argument mischaracterizes the district court's reasoning. The

22

district court began its analysis by considering whether any of the nine features Figert identified were themselves protectable. But the court did not stop there; it also considered whether, "notwithstanding the fact that the nine features [HPA] relies on do not warrant protection under the AWCPA, . . . the <u>arrangement</u> of those features is substantially similar in the Grant Park and Two Park Crest designs." <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 43 F. Supp. 3d 644, 676 (E.D. Va. 2014). And, contrary to HPA's assertion here, the district court did not exclude any feature from this analysis. Rather, the court concluded that no reasonable jury could find the two arrangements similar because, among other reasons, "the overall footprints of the two designs are highly different," and the two designs "have a different shape, size, and exterior appearance." <u>Id.</u> at 677.

Second, HPA claims that the district court erred in various respects by finding that the allegedly copied aspects of the Grant Park design are not eligible for copyright protection. We need not reach this argument because the district court also held that, even if those aspects were protected, Appellees are not liable to HPA because they did not copy them. This holding, which we affirm today, is sufficient to support the judgment.

Finally, HPA argues that the district court conflated intrinsic (i.e., subjective) and extrinsic (i.e., objective)

23

similarity when considering the two designs as a whole. Cf. Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 435-36 (4th Cir. 2010) (distinguishing between the intrinsic- and extrinsic-similarity analyses). HPA claims that the district court engaged in a subjective analysis when discussing whether the overall arrangement of elements in the two designs is extrinsically similar. But the district court correctly stated that "examining an ordinary person's subjective impressions of similarities between two works . . . is typically the province of the jury," and it declined to make any subjective finding about the two designs. Humphreys, 43 F. Supp. 3d at 679. HPA's final argument fails because it identifies no subjective finding by the district court in its extrinsic-similarity analysis, and our review reveals no such finding.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

# APPENDIX

Typical Grant Park Floorplan:



Typical Two Park Crest Floorplan:



Grant Park Exterior:



Two Park Crest Exterior:

