**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-1007**

_____

YVOUNE KARA PETRIE, Dr. DC. an Individual,

Plaintiff – Appellant,

v.

VIRGINIA BOARD OF MEDICINE, a quasi-public and quasi-private agency under the laws of the Commonwealth of Virginia; RANDOLPH CLEMENTS, DPM, in his individual capacity as a competitor with chiropractors in Virginia, and in his capacity as a member of the Virginia Medical Board; KAMLESH DAVE, MD, in his individual capacity as a competitor with chiropractors in Virginia, and in his capacity as a member of the Virginia Medical Board; SIOBHAN DUNNAVANT, MD, in her individual capacity as a competitor with chiropractors in Virginia, and in her capacity as a member of the Virginia Medical Board; WILLILAM HARP, MD, in his individual capacity as a competitor with chiropractors in Virginia, and in his capacity as a member of the Virginia Medical Board; JANE PINESS, MD, in her individual capacity as a competitor with chiropractors in Virginia, and in her capacity as a member of the Virginia Medical Board; WAYNE REYNOLDS, DO, in his individual capacity as a competitor with chiropractors in Virginia, and in his capacity as a member of the Virginia Medical Board,

Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:13-cv-01486-CMH-TRJ)

_____

Argued: March 22, 2016               Decided: May 16, 2016

_____

Before GREGORY and DUNCAN, Circuit Judges, and Richard L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Gregory and Judge Voorhees joined.

---

**ARGUED**: Vincent Mark Amberly, AMBERLY LAW, Leesburg, Virginia, for Appellant. Sarah Oxenham Allen, OFFICE OF THE VIRGINIA ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF**: Aaron R. Gott, GOTT PLLC, St. Louis Park, Minnesota, for Appellant. Mark R. Herring, Attorney General of Virginia, Cynthia V. Bailey, Rhodes B. Ritenour, Deputy Attorneys General, John D. Gilbody, Erin L. Barrett, Stephen J. Sovinsky, Assistant Attorneys General, OFFICE OF THE VIRGINIA ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

After the Virginia Board of Medicine ("the Board") sanctioned Yvoune Petrie, a Virginia chiropractor, for various violations of the Virginia statutes and regulations governing the practice of chiropractic, Petrie sued the Board, its executive director, and five of its members, claiming that the Board's action against her violated section 1 of the Sherman Act, 15 U.S.C. § 1. Because Petrie has failed to show that the Board's sanctioning her had any anti-competitive effects, we affirm the district court's order granting the Board's motion for summary judgment.

I.

The Board is a regulatory body established by the Virginia General Assembly to oversee the practice of medicine, osteopathic medicine, chiropractic, and podiatry in Virginia. It consists of eighteen members, including "one medical physician from each congressional district, one osteopathic physician, one podiatrist, one chiropractor, and four citizen members." Va. Code § 54.1-2911. Among other powers and responsibilities, the General Assembly has delegated to the Board the authority, upon finding that an individual has violated one of the various Virginia laws governing the professions within the Board's purview, to "impose a monetary

3

penalty or terms as it may designate" and to "suspend any license for a stated period of time or indefinitely." Va. Code § 54.1-2915(A).

Petrie's chiropractic practice came to the Board's attention after several of her patients filed complaints alleging, among other things, that Petrie was "passing herself off as a diabetes and thyroid specialist," S.A. 153, and that she falsely held herself out as a medical doctor in order "to mislead [a patient] into believing that she [was] a medical professional" who could "administer a medical 'Fat Burning Procedure,'" S.A. 158.[1] After an initial investigation of those complaints, on February 22, 2013, the Board convened a formal hearing at which it heard live testimony from Petrie's patients.

On February 28, 2013, the Board issued an order finding that Petrie had violated several of Virginia's statutes and regulations governing the practice of chiropractic. Essentially, the Board found that Petrie had been misleading her patients and practicing beyond the scope of her chiropractic license by holding herself out as a diet and nutrition counselor, by suggesting to patients that she could "reverse" their Type II diabetes or erectile dysfunction, and by

---

[1] Throughout this opinion, we use the term "J.A." to cite the Joint Appendix and the term "S.A." to cite the Supplemental Appendix.

4

performing a "non-invasive dermatological aesthetic treatment" which she advertised as "[l]iposuction without surgery" using a laser. J.A. 438–41. The Board sanctioned Petrie for those violations by suspending her license for six months and imposing a $25,000 fine.

Petrie appealed the Board's order to the Circuit Court of Fairfax County, Virginia. On September 12, 2013, that court dismissed Petrie's appeal with prejudice upon finding "that the Board did not act arbitrarily or capriciously, that a reasonable mind would not necessarily reach a different conclusion, and that there is a wealth of facts contained in the administrative record to support the Board's findings." S.A. 192. Petrie then appealed again, to the Virginia Court of Appeals, which affirmed the dismissal of Petrie's appeal. Petrie v. Va. Bd. of Med., No. 1986-13-4, 2014 WL 1379621, at *1 (Va. Ct. App. April 8, 2014).

While her appeal was pending in the Virginia Court of Appeals, Petrie initiated another effort to overturn the Board's order against her by filing this action in federal district court. In her federal complaint, Petrie alleges that the Board's order reflects a conspiracy to exclude chiropractors from certain markets for medical services, in violation of

5

section 1 of the Sherman Act.[2] Notably, Petrie "has not alleged that [Virginia's] statutory scheme of licensure and scope of practice violates the Sherman Act." Appellant's Br. at 43. Rather, the "crux" of her complaint is that the Board's order sanctioning her "was <u>contrary</u> to Virginia law, that it constituted a 'power grab' by '[m]edical doctors and doctors of osteopathy who have financial incentives to limit the scope of practice of competitors like chiropractors.'" <u>Id.</u> (quoting J.A. 16–19). In other words, Petrie argues that a majority of the Board's members conspired to adopt an improper interpretation of the Virginia statutes that define the scope of chiropractic, for the purpose of stifling competition between chiropractors and other medical professionals.

Petrie seeks treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, and injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26. The Board moved for summary judgment, and on December 1, 2014, the district court granted the Board's motion and dismissed Petrie's complaint. Petrie appealed.

---

[2] Petrie also included several state-law tort claims against the Board in her federal complaint, but the district court's summary judgment order did not address those claims and Petrie does not press them on appeal.

6

II.

This court "review[s] de novo an award of summary judgment, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party." Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(a)).

"The party moving for summary judgment 'discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case.'" Humphreys & Ptrs. Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015) (quoting Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002)). If the moving party can do so, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of

7

evidence." <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th Cir. 2013) (citations omitted).

## III.

Below, we first set out the basic analytical framework for an antitrust claim under section 1 of the Sherman Act and explain how the district court applied that framework to conclude that the Board was entitled to summary judgment. Then, we review the district court's analysis, and ultimately affirm.

## A.

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade." 15 U.S.C. § 1. This court has interpreted that language to mean that, "[t]o establish a § 1 antitrust violation, a plaintiff must prove '(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade.'" <u>N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n</u>, 717 F.3d 359, 371 (4th Cir. 2013) (quoting <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 202 (4th Cir. 2002)). If the plaintiff is able to prove a violation of section 1, she then faces a third requirement: she "must prove the existence of antitrust injury, which is to say injury of the type the anti-trust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." <u>Dickson</u>, 309 F.3d at 202-03 (4th Cir. 2002) (emphasis omitted)

(quoting Atl. Richfield v. USA Petroleum Co., 495 U.S. 328, 334 (1990)).

Here, the district court held that Petrie has met none of those three requirements. It held that Petrie has not shown an unreasonable restraint on trade because she "has shown no anticompetitive effects on the relevant market," and certainly none that could outweigh "the procompetitive benefits of the Board's actions." J.A. 619–20. It held that Petrie has not shown a "contract, combination, or conspiracy" because she "failed to establish that the action by the Board and its members to sanction her constituted a conscious commitment to a common scheme by competitors to restrain trade." J.A. 622. And it held that Petrie "has failed to show the antitrust injury necessary to bring this complaint." Id.

## B.

We address first whether the Board's order against Petrie constitutes an "unreasonable restraint of trade." To determine whether a particular agreement in restraint of trade is unreasonable, "the Supreme Court has authorized three methods of analysis: (1) per se analysis, for obviously anticompetitive restraints, (2) quick-look analysis, for those with some procompetitive justification, and (3) the full 'rule of reason,' for restraints whose net impact on competition is particularly difficult to determine." Continental Airlines, Inc. v. United

9

Airlines, Inc., 277 F.3d 499, 508–09 (4th Cir. 2002). "The boundaries between these levels of analysis are fluid"; they "are best viewed as a continuum, on which the amount and range of information needed to evaluate a restraint varies depending on how highly suspicious and how unique the restraint is." Id. at 509 (citation and quotation marks omitted).

"In all cases, however, the criterion to be used in judging the validity of a restraint on trade is its impact on competition." N.C. State Bd. of Dental Examiners v. F.T.C., 717 F.3d 359, 373 (4th Cir. 2013) (quoting Continental Airlines, 277 F.3d at 509). And because "[t]he antitrust laws were designed to protect competition, not competitors, . . . [t]he elimination of a single competitor standing alone, does not prove [the] anti-competitive effect" necessary for a Sherman Act violation. Military Servs. Realty, Inc. v. Realty Consultants of Va., Ltd., 823 F.2d 829, 832 (4th Cir. 1987) (citations omitted).

The district court found that the Rule of Reason analysis was the appropriate mode to apply in this case. We agree. It is clear that the Board's order against Petrie injured Petrie herself, but "a plaintiff cannot demonstrate the unreasonableness of a restraint merely by showing that it caused him an economic injury." Oksanen v. Page Memorial Hosp., 945 F.2d 696, 708 (4th Cir. 1991). Recognizing this, Petrie

attempts to cast her own injury as an injury to all Virginia chiropractors. Specifically, Petrie claims that "[t]he Board used [her] as a springboard to eliminate an entire class of competitors by its own fiat and for improper purposes," Appellant's Br. at 26, and that "[b]ut for the Board's anticompetitive conduct, Dr. Petrie and other doctors of chiropractic would compete or have the potential to compete with the Board's members" to offer the sorts of services that the Board sanctioned Petrie for having offered, id. at 27.

Petrie, however, has been unable to present any specific evidence that the Board's order against her has had the broader effects she posits. The record is completely devoid of evidence that any other Virginia chiropractor has sought to provide laser fat removal services or the other services the Board sanctioned Petrie for providing, or that any other Virginia chiropractor was providing those services and ceased doing so after the Board sanctioned Petrie.[3] Instead of providing actual evidence of negative effects on competition between chiropractors and

---

[3] Petrie presented expert testimony suggesting that, as a policy matter, chiropractors should be permitted to provide the sorts of treatments Petrie was sanctioned for providing. To the extent Petrie's argument is that Virginia's scope-of-practice laws should be changed, the Virginia legislature, not the federal courts, is the proper forum. See N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n, 135 S. Ct. 1101, 1109–10 (explaining the federalism-based principle that state-government policy judgments are generally immune from attack under federal antitrust law).

11

medical doctors, Petrie simply speculates that the Board's order against her could have had such effects.  But mere speculation is not enough to withstand a motion for summary judgment.  Accordingly, we affirm the district court's holding that Petrie failed to show that the Board imposed an unreasonable restraint of trade by sanctioning Petrie for her violations of the Virginia laws governing the practice of chiropractic.[4]

Because Petrie's failure to prove that the Board's order against her constituted an unreasonable restraint of trade is an independently sufficient basis to grant summary judgment against her, we need not address whether Petrie has proven that the Board engaged in a "contract, combination, or conspiracy," or whether Petrie has suffered the sort of "antitrust injury" that confers standing upon a private individual to sue for a violation of the Sherman Act.  Unlike the injury requirement associated with Article III standing, which is a jurisdictional

---

[4] Petrie also challenges various evidentiary rulings made by the district court, including the district court's refusal to grant a motion to compel that Petrie filed well after the close of discovery, and the district court's decision to exclude various expert declarations because of its impression that the declarations would not be helpful in determining whether the Board had committed an antitrust violation.  We are satisfied that none of the district court's evidentiary rulings in this case constituted an abuse of discretion, and therefore affirm. See Jacksonville Airport, Inc. v. Michkeldel, Inc., 434 F.3d 729, 732 (4th Cir. 2006) (noting that a district court's evidentiary rulings are reviewed for abuse of discretion).

12

prerequisite to reaching the merits of any claim, the "antitrust injury" requirement need not be addressed before a court can decide whether a plaintiff has proven a valid claim under section 1 of the Sherman Act.  Indeed, "[w]hen a court concludes that no [antitrust] violation has occurred, it has no occasion to consider standing."  Levine v. Cent. Florida Med. Affiliates, Inc., 72 F.3d 1538, 1545 (11th Cir. 1996) (quoting 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 360f, at 202-03 (rev. ed. 1995)); see also Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc., 123 F.3d 301, 306 (5th Cir. 1997).

## IV.

For the reasons stated above, we affirm the district court's order granting summary judgment to the Board and the individual defendants.

AFFIRMED